UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DAMIAN FRANCOIS

VERSUS

GENERAL HEATLH SYSTEM

CIVIL ACTION

NO. 3:17-CV-522-JWD-RLB

**RULING ON PLAINTIFF'S MOTION IN LIMINE TO REDACT THE SUMMER OF 2019 MEDICAL RECORDS OF MR. FRANCOIS**

Before the Court is the *Motion in Limine to Redact the Summer of 2019 Medical Records of Mr. Francoi*s (Doc. 124) brought by plaintiff Damian Francois ("Plaintiff" or "Francois"). It is opposed by defendant General Health System ("Defendant" or "General"). (Doc. 125.) For the following reasons, the motion is granted in part, denied in part, and deferred in part.

## BACKGROUND

Plaintiff alleges that he is a "profoundly deaf, illiterate, and language-deprived individual" (Doc. 77 at 1) who suffered a gunshot wound in April 2017 which rendered him a paraplegic. (Doc. 48-1 at 5.) He thereafter sought and "received extensive medical care at the Baton Rouge General wound care clinic" ("BRGWC") from June 14, 2017 until September 8, 2017. (Doc 77 at 1.)[1]

According to Plaintiff, he "communicates primarily in American Sign Language ('ASL') and has a very limited understanding of English." (*Id*.) Plaintiff sues General as the owner and operator of the BRGWC (Doc. 21 at 2-3) charging that "Defendant failed to provide him with adequate auxiliary communication aids and services he needs to communicate effectively in a medical setting" (*id*. at 2) in violation of Title III of the Americans with Disabilities Act, 42

---

[1] Defendant alleges Francois was "admitted approximately four times between 2017 and 2018 to BRGMC for a variety of conditions, including decubitus wounds and treatment thereof." (Doc. 48-1 at 5.)

1

U.S.C § 12181 ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"); and Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116. (Doc. 21 at 2-3.) Plaintiff asks for injunctive relief and damages.

## SUMMARY OF ARGUMENTS OF THE PARTIES

In his motion Plaintiff seeks to preclude Defendant's use of a portion of Plaintiff's Baton Rouge General medical record for June 12, 2018 (MR 00908327), which was attached to Plaintiff's motion. (Doc. 124-2.) It is a June 17, 2018 nursing note of nurse Latricia A. Manning which recounts an encounter between Manning, Plaintiff, Plaintiff's grandmother, an interpreter participating via Video Remote Interpreting ("VRI"), and Paula Rodriguez. Rodriguez is described in Plaintiff's memorandum as Plaintiff's "friend and unofficial adopted mother." (Doc. 124-1 at 1.) In the Pretrial Order, she is described by Plaintiff as "an interpreter and friend" of Plaintiff. She is described by Defendant as an "advocate" for Plaintiff (see, e.g. Doc 125 at 1), and, indeed Rodriguez herself describers her role as "advocating" for Plaintiff. (Doc. 135-4 at 1.)

Since the note was written, Manning's "last name changed to 'Campise'…" (Doc. 125 at 2, n. 5.) Campise is listed by Defendant as a "will-call" witness on the Pretrial Order. (Doc. 165 at 44.) Her deposition is listed by Defendant as an exhibit in the event Campise is unavailable or for impeachment purposes. (Doc. 165 at 33.) The Court will use Campise, the witness's current name.

The nurse note at issue recounts an encounter between Campise and Rodriguez but also involves conversations with a remote VRI interpreter, Plaintiff, Plaintiff's grandmother and a supervisor named Jolene. The note centers on a disagreement between Campise and Rodriguez regarding whether the NextTalk remote video interpretation (referred to by Campise as "next talk"), is effective in communicating with the patient. For convenience, the nursing note in question is quoted in its entirety as follows:

> At 1425, I entered the room and used the next talk to communicate with the patient. While talking to the interpreter who talked to the patient, the patient communicated with the interpreter. Not once, did the patient say he did not understand the interpreter or what was being said to him. Then a lady walked into the room and started saying it was discrimination because we are using the next talk instead of a live in person interpreter. It was explained to her we do not use live in person interpreters and she preceeded to tell me we did and we were discriminating against him because he was a poor black man. For the past two days, I have done my best to communicate with my patient. I have wrote things down so he could read them and I have used the interpreter. She preceeded to tell me that it was above our heads and we could not possibly understand what she was saying. She said it took her years to learn his way of communicating. So I asked her how was a live in person interpreter supposed to understand his way of communicating if it took her years to understand him. She said he does not know the english language so therefore cannot understand what we write or what the next talk interpreter is saying. She said for all we know they could be telling him something different. The patient however, did facebook message her many times, he read my messages I wrote, and he has been listening to the TV on full blast. While I was trying to take the patients food order, I was standing to the right of the patient and the patient was looking at me. The grandmother was standing to the left of the patient and was reading out loud the food menu to him. He would shake his head or nod it while still looking at me. He never once looked at the grandmother. I believe, the patient can hear but it has to be loud. I asked her is it the communication problem or the fact that he is on a 3rd grade level as she had put it. I told her if he does not understand what we are talking to him about, then it is not a communication problem, there is a learning deficiet. She told me that was not the case. So I gave her an example of what I was talking about. She said he did not know what antibiotics was or what they were for. I asked her if he had been on antibiotics before in his life and she said yes. I stated, if he has been on them, either he has not learned what they are for or they have not taught him what they are for. I told her, that is a learning problem not a communication problem. She told me I was trying to prove her wrong, and I said no mam, I am trying to figure out what is best for my patient to give him the care that HE needs. She said he is under the ADA act and protected by the federal government and that we are mistreating him by not getting a live in person interpreter. I told her the next talk is a live interpreter. The house supervisor, Jolene, talked to them and tried to tell them we did not offer live in person interpreters but they kept insisting that we did. I could not reason with the interpreter or the grandmother. We gave the patient a bath and did his wound care.

Plaintiff argues that the note "contains hearsay statements that are not admissible under any exception." (Doc. 124 at 1.) Specifically, Plaintiff argues that the note was not made for medical diagnosis or treatment and therefore does not properly fall within the Federal Rule of Evidence 803(4) exception. (Doc. 124-1 at 4.) In addition, Plaintiff argues that it does not fall into the business records exception provided by Rule 803(6). (*Id.* at 5.)

While not made in its opposition to this motion, (Doc. 125), Defendant argues in other pleadings filed in this case that certified medical records are admissible by virtue of a statutory exception to the hearsay rule provided in LA. R.S. 13:3714(A). (Doc. 168 at 2-4.) In its opposition here, Defendant argues that 1) the statements are not hearsay since they are not offered for their truth, (Doc. 125 at 3); 2) they are not hearsay under Rule 801(d)(2)(A) since Rodriguez was Plaintiff's representative and agent (*id.*); 3) they are not hearsay because they will be used to rehabilitate the witness's credibility under Rule 801(1)(d)(B) after an anticipated attack on cross examination (*id.* at 7-9); 4) they are statements of Campise's present sense impression under Rule 803(1) (*id.*, at 4); 5) they are statements of Campise's then existing mental, emotional or physical condition under Rule 803(3) (*id.* at 6-9); 6) they fall within the business records exception of Rule 803(6), (*id.* at 4-5); 7) they are Campise's excited utterances

3

under Rule 803(2), (*id*. at 6.); and, 8) they are statements of past recollection recorded under 803(5), (*id*.).

Since not every statement qualifies for every exception, Defendant has provided a chart in which it argues for the applicability of certain individual provisions of Rules 801 and 803 that justify, in its view, admission of individual statements made by Campise. (*Id*. at 6-9.)

**ANALYSIS**

As the Court noted above, Ms. Campise is listed by Defendant as a will-call witness. (Doc. 165 at 44.) Thus, at least some of the disputed evidence contained in the nursing note can come into evidence by way of her trial testimony, without regard to the note itself. For instance, the statement, "At 1425, I entered the room and used the next talk to communicate with the patient." (Doc. 124-2 at 1), would merely be fact testimony, and certainly not hearsay, if the witness testified to such at trial.

Furthermore, if in cross examining Campise, Plaintiff makes "an express or implied charge that [Campise] recently fabricated [her account] or acted from a recent improper influence or motive in so testifying," then the nurse's note can be introduced to contradict that charge and, for that purpose, would not considered hearsay. Rule 801(d)(1)(B)(i). Similarly, the note is not hearsay if used by Defendant, after cross examination, to "rehabilitate the declarant's credibility when attacked on another ground." Rule 801(d)(1)(B)(ii). While Defendant relies on these provisions in its memorandum (Doc. 125 at 7-9), the Court cannot rule on the applicability of those provisions until after Campise has been cross examined at trial.

Third, the note can clearly be used by the Plaintiff to impeach the testimony of Ms. Campise should such be appropriate.

# APPLICABILITY OF LA. R.S. 13:3714(A)

In support of its argument that certified copies of medical records are admissible in this case (made in connection with another motion, Doc. 168 at 2-3), Defendant cites La. R.S. 13:3714(A) and this Court's decisions in *Ariza v. Loomis Armored, U.S., LLC*, No. 13- 419, 2016 WL 297702, at n. 6 (M.D. La. January 22, 2016) and *Williams v. Sanders*, No. 13-97, 2016 WL 81272 * 1 (M.D. La. January 7, 2016). La. R.S. 13:3714(A) states:

> A. Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, or a copy of a bill for services rendered, medical narrative, chart, or record of any other state health care provider, as defined by R.S. 40:1299.39(A)(1) and any other health care provider as defined in R.S. 40:1299.41(A), certified or attested to by the state health care provider or the private health care provider, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the bills, medical narrative, chart, or record is sought to be used may summon and examine those making the original of the bills, medical narrative, chart, or record as witnesses under cross-examination.

Defendant misreads *Ariza* and *Williams*. Neither case holds that this Louisiana statute can somehow avoid or overcome conflicting Federal Rules of Evidence. In *Ariza*, a case based on both Louisiana as well as federal substantive law, (Docket No. 13-419, Doc. 1 at 1), the Court *granted* the motion in limine to exclude the medical records at issue based on the Federal Rules of Evidence hearsay rules and found that the records did *not* fall into the business records exception to that rule. *Ariza*, 2016 WL 297702 at *4-5 ("Notes scratched on a pad by a doctor or an email written at a patient's request are not the kind of official records to which Rule 803(6) applies, for they are too informal and too unique to the individual to be classified as records of a regular business activity. However, according to Plaintiff, a foundation may still be laid as to Exhibits 6 and 8, as the doctors who drafted those notes are scheduled to testify.") In that

5

connection, the Court noted that La. R.S. 13:2714(A) might possibly be used to assist in laying that foundation at trial. (*Id*. at n. 6.)

Similarly, in *Williams*, there was no hearsay issue. There, the issue was the *relevance* of the pro se plaintiff's medical records. The Court held that its finding that plaintiff's medical records were relevant in showing injuries that demonstrated excessive force was "buttressed" and "strengthened" by the full control over those records exercised by the defendant's employer and the employer's certification of those records under 13:3714(A). *Williams*, 2016 WL 81272 at *1. The Court went on to hold that, to be admissible, however, the plaintiff would need to lay a proper foundation for the introduction of the records at trial. (*Id*. at *2.)

"It is well-settled that federal law governs the admissibility or other use of evidence in a federal proceeding, even if the evidence was obtained in violation of state law." *United States v. Edwards*, 79 F. Supp. 2d 645, 648 (M.D. La. 1999) (citations omitted). "The principle that governs today is stated easily…. [I]f a[] [Federal Rule of] Evidence [] covers a disputed point of evidence, the Rule is to be followed, even in diversity cases, and state law is pertinent only if and to the extent the applicable Rule makes it so or it provides the federal court with guidance in the construction and application of the Evidence Rules." 19 Charles A. Wright and Arthur R. Miller, *Federal Practice & Procedure* § 4512 (3d ed. 2016); *See also, Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018), *aff'd*, No. 11-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018) (Even "[i]n a diversity case, the admissibility of evidence is a procedural issue governed by federal law." (citing *Reed v. Gen. Motors Corp.*, 773 F.2d 660, 663 (5th Cir. 1985).); *Dawsey v. Olin Corp.*, 782 F.2d 1254, 1262 (5th Cir. 1986) ("[W]e need not concern ourselves with the Louisiana statute because the statute does not apply in federal court; questions concerning the admissibility of evidence in federal court are governed by the Federal

Rules of Evidence.") (citing Fed. R. Evid. 1101; *Pollard v. Metropolitan Life Insurance Co.*, 598 F.2d 1284, 1286 (3d Cir.1979).)

Thus, in determining whether the statements made in the nurse's note are admissible, the Court turns to the Federal Rules of Evidence. Defendant has broken the statement into its individual sentences but claims that the entire note is subject to the exception to the hearsay rule for records of a regularly conducted activity, sometimes referred to as the "business records" exception. Rule 803(6). It claims that much of it is not hearsay and the remainder of the statements are subject to the other exceptions provided in Rules 803(1)-(5). Some of these arguments will be considered and ruled on separately, while others will be decided on a sentence by sentence basis.

## HEARSAY OR NOT

Certain statements are not, says Defendant, being offered for the truth of the statements and thus, are not hearsay. Rule 801(c)(2). All of the statements attributed to Ms. Rodriguez qualify as such, argues Defendant, since they are not being offered for their truth; indeed, Defendant contends her statements are *not* true. The flaw in Defendant's argument is that Ms. Rodriguez's statements are embedded in the hearsay statements of Campise, i.e. are hearsay within hearsay. Thus, the statement in which Ms. Rodriguez is quoted must qualify independently as non-hearsay or fall under an exception to the hearsay rule before one can consider the Rodriguez statement itself. So, for instance, Campise writes: "Then a lady walked into the room and started saying it was discrimination because we are using the next talk instead of a live person interpreter." Defendant obviously wants the jury to believe the truth of that statement and therefore it is hearsay. If Campise made the same statement in her live testimony, then the Court agrees that her statement that "the lady came into the room" would not be hearsay

7

and whether the embedded Rodriguez statement was hearsay would be the issue.[2] But because this statement is being offered in this document, it is hearsay and, for the reasons which follow, this statement does not fall into an exception to the hearsay rule. Therefore, it is unnecessary to rule on the Rodriquez statement embedded in the Campise statement.

## "BUSINESS RECORDS" – 803(6)

Defendant claims that the entire note falls within the exception 803(6) exception: "records of a regularly conducted activity." If this were a more usual nurse note capturing the nurse's observations of the patient's condition and recording vital signs and the like, the Court might agree. But that is not what we have here. Here, Nurse Campise recounts an extended conversation among at least six people (Campise, Rodriguez, the VRI interpreter, Plaintiff, Plaintiff's grandmother, and the house supervisor Jolene). This is just the kind of document which is "too informal and too unique to the individual to be classified as records of a regular business activity." *Ariza*, 2016 WL 297702 at * 4.

There is a separate reason the business records exception does not apply here. "An important distinction arises when a business record contains a hearsay statement of an 'outsider' to the business. If the source of the statement is an outsider, Rule 803(6) "does not, by itself, permit the admission of the business record." *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991). "To be admissible, the outsider statement must itself qualify for admission over a hearsay objection, for example by satisfying a separate hearsay exception." 30B Charles A. Wright and Jeffrey Bellin, *Federal Practice & Procedure* § 6866 (2018). *See also, Bradley v. Sugarbaker*, 891 F.3d 29, 35 (1st Cir 2018) (refusing to apply Rule 803(6) exception to patient's

---

[2] If this were the case and Ms. Rodriguez's statement was not being offered for its truth, as Defendant represents, then it would not be hearsay and would be allowed.

statement in hospital record.) As mentioned above, there are at least three "outsiders" referenced in this note. This exception does not apply.

## RECORDS FOR MEDICAL DIAGNOSIS OR TREATMENT

Defendant contends that Rule 803(4) applies as an exception to the hearsay rule, arguing that the statement "is made for – and is reasonably pertinent to – [Plaintiff's] medical diagnosis and treatment and describes medical history ; past or present, symptoms or sensations; their inception; or their general cause." Rule 803(4). In the long note, there is only one statement that qualifies under this exception. "We gave the patient a bath and did his wound care." To this extent, the motion is denied.

## RECORDED RECOLLECTION – 803(5)

This exception is claimed by Defendant as to certain parts of the nurses note. (Doc. 125 at 7-9.) "Unique among the Federal Rule of Evidence 803 exceptions, Rule 803(5) requires that the declarant testify. As the Advisory Committee acknowledges, 'the unavailability requirement of the exception is of a limited and peculiar nature,' namely that the declarant testifies but cannot adequately recall the subject covered by a prior recorded statement." 30B Charles Alan Wright and Jeffrey Bellin, *Federal Practice & Procedure* § 6853 (2017) (citing Advisory Committee Note to Rule 803(5).) Here, there has been no showing that Ms. Campise "cannot recall well enough to testify fully and accurately." Rule 803(5)(A). This matter is deferred to trial. Even if this exception is met, it does not address the hearsay within hearsay that remains in the statement and that must be addressed on a statement by statement basis.

## EXCITED UTTERANCE – 803(2)

Defendant raises this exception (Rule 803(2)), as to certain specific statements. (Doc. 125 at 8.) "Courts…consider a wide variety of factors in assessing whether a statement qualifies as an excited utterance, including: 'the amount of time between the event and the statement; the nature

of the event; the subject matter of the statement; the age and condition of the declarant; the presence or absence of self-interest; and whether the statement was volunteered or in response to questioning." 30B Charles Alan Wright and Jeffrey Bellin, *Federal Practice and Procedure* § 6817 (2017) (quoting *U.S. v. Pursley*, 577 F.3d 1204, 1220 (10th Cir. 2009)). For instance, "[a]s time passes after the startling event, and the declarant resumes normal activities, courts are more likely to deem subsequent statements, even if made just a few hours after the event, to fail to qualify for admission under Federal Rule of Evidence 803(2)." 30B Charles Alan Wright and Jeffrey Bellin, *Federal Practice & Procedure* § 6821 (2017) (citing *U.S. v. Wesela*, 223 F.3d 656, 663 (7th Cir. 2000).) In this case, the note itself indicates that the event occurred at 14:25 but the note was not dictated until 17:28, over three hours later. (Doc. 124-2 at 1.) This note therefore fails to qualify for this exception. Furthermore, Defendant provides no evidence that this event involves the kind of "excitement" needed to justify applying this exception. While there appears to have been a disagreement between Campise and Rodriguez, there is insufficient evidence showing that the event generated enough "emotional excitement" to qualify. 30B Charles Alan Wright and Jeffrey Bellin, *Federal Practice & Procedure* § 6820 (2017).

**PRESENT SENSE IMPRESSION – 803(1)**

Defendant claims this exception as to only two statements. (Doc. 125 at 7,8.) This exception requires that the statement be made "while or immediately after the declarant perceived" an event or condition. Rule 803(1). The following discussion of the phrase "immediately after" is enlightening.

> The spirit of the limitation permits the temporal delay to stretch beyond a few moments if the declarant is naturally waiting for the first opportune time to utter a more-or-less contemporaneous observation. From this, it is easy to note, with approval, a rule to the effect that "courts consistently require substantial contemporaneity" for statements admitted under the present sense impression hearsay exception. (quoting *U.S. v. Green*, 556 F.3d 151, 156 (3d Cir. 2009).

10

> That said, there is no specific expiration date on present sense impressions, leaving courts some wiggle room. Each case depends on its facts, and courts occasionally permit a "slight lapse" of a few minutes up to half an hour between event and observation. (citing *U.S. v. Mejia-Valez*, 855 F. Supp. 607, 614 (E.D. N.Y. 1994) (citing cases).)

30B Charles Alan Wright and Jeffrey Bellin, *Federal Practice & Procedure* § 6814 (2017). The three-hour lapse between the events described and the writing of the statement goes well beyond the requirement of a "more or less contemporaneous observation" required by the rule.

**THEN EXISTING MENTAL, EMOTIONAL, OR PHYSICAL CONDITION – 803(3)**

Defendant claims this exception found in Rule 803(3) applies to two statements: "[Plaintiff] would shake his head or nod it while still looking at me." and "I could not reason with the interpreter or the grandmother." (Doc. 125 at 8 and 9.) Neither statement falls under the exception's literal language or the provision as interpreted since it is the *declarant's* then existing mental, emotional or physical condition to which the exception applies. "Only statements about what the *declarant* is feeling at the time the statement is made can be admitted under the rule. In other words, qualifying statements must concern what the *declarant* 'was thinking in the present.'" 30B Charles Alan Wright and Jeffrey Bellin, *Federal Practice & Procedure* § 6834 (2017) (citing *U.S. v. Dimaria*, 727 F.2d 265, 271 (2d Cir. 1984) (emphasis added.)

**CONCLUSION**

As mentioned above, any claim that a statement is not hearsay based on Rule 801(d)(1)(B) is deferred until after Plaintiff's cross examination of Campise. As to those parts of the statement which Defendant claims are subject to the recorded recollection exception, those will be deferred until trial and will only be considered if Campise "cannot recall well enough to testify fully and accurately," Rule 803(5)(A), and her memory is not refreshed by looking at the statement. As to the other statements and Defendant's claims for admissibility, the Court rules as follows:

11

**RULING - STATEMENT BY SENTENCE**

| STATEMENT/ENTRY | RULING |
|---|---|
| 1. At 1425, I entered the room and used the next talk to communicate with the patient. | Hearsay. No exception applies. Motion granted. But witness can testify to this in open court. |
| 2. While talking to the interpreter who talked to the patient, the patient communicated with the interpreter. | Hearsay and hearsay within hearsay. No exception applies. Motion granted. But witness can testify to this in open court. |
| 3. Not once, did the patient say he did not understand the interpreter or what was being said to him. | Hearsay. No exception applies. Motion granted. But witness can testify to this in open court. |
| 4. Then a lady walked into the room and started saying it was discrimination because we are using the next talk instead of a live in person interpreter. | Hearsay and hearsay within hearsay. No exception applies to the hearsay. Motion granted. |
| 5. It was explained to her we do not use live in person interpreters and she proceeded to tell me we did and we were discriminating against him because he was a poor black man. | Hearsay and hearsay within hearsay. No exception applies to hearsay. Motion granted. |
| 6. For the past two days, I have done my best to communicate with my patient. | Hearsay. No exception applies. Motion granted. But witness can testify to this in open court. |
| 7. I have wrote things down so he could read them and I have used the interpreter. | Hearsay. No exception applies. Motion granted. But witness can testify to this in open court. |
| 8. She proceeded to tell me that it was above our heads and we could not possibly understand what she was saying. | Hearsay and hearsay within hearsay. No exception applies to hearsay. Motion granted. |
| 9. She said it took her years to learn his way of communicating. | Hearsay and hearsay within hearsay. No exception applies to hearsay. Motion granted. |
| 10. So I asked her how was a live in person interpreter supposed to understand his way of communicating if it took her years to understand him. | Hearsay. No exception applies. Motion granted. |
| 11. She said he does not know the English language so therefore cannot understand what we write or what the next talk interpreter is saying. | Hearsay and hearsay within hearsay. No exception applies to hearsay. Motion granted. |
| 12. She said for all we know they could be telling him something different. | Hearsay and hearsay within hearsay. No exception applies to hearsay. Motion granted. |
| 13. The patient however, did facebook message her many times, he read my messages I wrote, and he was has been listening to the TV on full blast. | Hearsay. No exception applies. Motion granted. But witness can testify to this in open court. |

| | |
|---|---|
| 14. While I was trying to take the patients food order, I was standing to the right of the patient and the patient was looking at me. | Hearsay. No exception applies. Motion granted. But witness can testify to this in open court. |
| 15. The grandmother was standing to the left of the patient and was reading out loud the food menu to him. | Hearsay and hearsay within hearsay. No exception applies to hearsay. Motion granted. |
| 16. He would shake his head or nod it while still looking at me. | Hearsay. No exception applies. Motion granted. But witness can testify to this in open court. |
| 17. He never once looked at the grandmother. | Hearsay. No exception applies. Motion granted. But witness can testify to this in open court. |
| 18. I believe, the patient can hear but it has to be loud. | Hearsay. No exception applies. Motion granted. But witness can testify to this in open court. |
| 19. I asked her is it the communication problem or the fact that he is on a 3rd grade level as she had put it. | Hearsay. No exception applies. Motion granted. |
| 20. I told her if he does not understand what we are talking to him about, then it it's not a communication problem, there is a learning deficit. | Hearsay. No exception applies. Motion granted. |
| 21. She told me that was not the case. | Hearsay and hearsay within hearsay. No exception applies to hearsay. Motion granted. |
| 22. So I gave her an example of what I was talking about. | Hearsay. No exception applies. Motion granted. |
| 23. She said he did not know what antibiotics was or what they were for. | Hearsay and hearsay within hearsay. No exception applies to hearsay. Motion granted. |
| 24. I asked her if he had been on antibiotics before in his life and she said yes. | Hearsay. No exception applies. Motion granted. |
| 25. I stated, if he has been on them, either he has not learned what they are for or they have not taught him what they are for. | Hearsay. No exception applies. Motion granted. |
| 26. I told her, that is a learning problem not a communication problem. | Hearsay. No exception applies. Motion granted. |
| 27. She told me I was trying to prove her wrong, and I said no mam, I am trying to figure out what is best for my patient to give him the care HE needs. | Hearsay and hearsay within hearsay. No exception applies to hearsay. Motion granted. |
| 28. She said he is under the ADA act and protected by the federal government and that we are mistreating him by not getting a live in person interpreter. | Hearsay and hearsay within hearsay. No exception applies to hearsay. Motion granted. |
| 29. I told her the next talk is a live interpreter. | Hearsay. No exception applies. Motion granted. |

| 30. The house supervisor, Jolene, talked to them and tried to tell them we did not offer live in person interpreters but they kept insisting that we did. | Hearsay and hearsay within hearsay. No exception applies to hearsay. Motion granted. |
| 31. I could not reason with the interpreter or the grandmother. | Hearsay. No exception applies. Motion granted. But witness can testify to this in open court. |
| 32. We gave the patient a bath and did his wound care. | Hearsay. Rule 803(4) exception applies. Motion denied. But witness can testify to this in open court. |

Thus, the Plaintiff's motion is granted in part, denied in part, deferred in part.

Signed in Baton Rouge, Louisiana, on <u>March 5, 2020</u>.

**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**