UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DAMIAN FRANCOIS                              C.A. NO.:  3:17-CV-522-JWD-RLB

VERSUS

GENERAL HEATLH SYSTEM

RULING ON OBJECTIONS TO MEDICAL RECORD EXHIBITS

This matter comes before the Court on a portion of Plaintiff's Consolidated Motion in

Limine ("Motion") seeking to exclude the "Introduction of Medical Records from Other

Providers" brought by plaintiff Damian Francois ("Francois" or "Plaintiff"). (Doc. 128-1 at 1-6.)

The motion was opposed by defendant General Health System, d/b/a Baton Rouge General

Medical Center ("BRG" or "Defendant"). (Doc. 146.) Supplemental submissions were made by

the Defendant (Docs. 168 and 191) and Plaintiff (Doc. 184). The Court has carefully considered

the law, the facts in the record, and the arguments and submissions of the parties and is prepared

to rule. For the following reasons, the Motion is granted in part, denied in part and deferred in

part.

PROCEDURAL BACKGROUND

In neither the Plaintiff's motion nor Defendant's original opposition did the parties

supply the actual documents at issue. In his motion, Plaintiff simply referred to the medical

records as they were listed by Defendant in the Pretrial Order. (Doc. 128-1 at 1-2.) In the Pretrial

Order, Defendant listed certified copies of the records of 10 health care providers or facilities.

(Doc. 123 at 23-25, Exhibits 24-34.) In his Motion, Plaintiff complained of the "thousands of

pages of medical records referenced" in those exhibits which included "dozens of medical

appointments, scores of medical professionals, and a wide array of facilities." (Doc. 128 at 2.) In

1

its opposition, Defendant represented that "Defendant intends to offer at trial the certified records

of the following health care providers for treatment of Plaintiff, Damian Francois", thereafter

listing, without limitation or page numbers, the records of nine providers or facilities. (Doc. 146

at 1-2.) [1]

In a companion case, *Ward v. Baton Rouge General Physicians, Inc.*, No. 18-451, Doc.

90, the Court ruled on an identical motion as follows:

> The Court finds that the records cannot come into evidence in total; and if there are specific parts of the records the Defendant would like to introduce, the Defendant shall submit a chart to the Court . . . which contains the following:
>
> a. Specific entries sought to be introduced;
> b. Where the entry can be found in the record;
> c. The relevance of the entry;
> d. Whether or not it is hearsay, and if not, why not, and if so, what exception to the hearsay rule Defendant intends to apply;
> e. Whether the introduction would be for impeachment;
> f. If the entry is admissible, how does the entry qualify for admission under Federal Rule of Evidence 701.

The Court adopted the order in *Ward* and made it applicable in the present case.  (Doc.

162.) In response to the Court's order, Defendant filed a Memorandum in Support of

Defendant's Medical Record Exhibits to be Offered at Trial (Doc. 168) which contains the

ordered chart. (Doc. 168 at 9-28.) The actual exhibits were filed under seal. (Doc. 167-1 at 1-60,

Docs. 199 and 199-1, and Docs. 201-2 and 201-3.) [2] Francois filed Plaintiff's Response to

---

[1] In its memorandum, Defendant represents that "BRG's proposed exhibits D24-34 are and always have been *excerpted* medical records." (Doc. 168 at 1, n.1, emphasis in original.) This statement is belied by BRG's listing of these exhibits in the Pretrial Order. (Doc. 123.) Two exhibits (26 and 28) have well over 1000 pages each. Five exhibits have no page numbers listed, merely stating that "Defense counsel determining specific range of documents," (25, 27, 30 and 34) and for two exhibits, the records had not yet been received by defense counsel when the Pretrial Order was submitted (32 and 33). (Doc. 123 at 23-25.) In its opposition, Defendant stated "Defendant intends to offer at trial the certified records of the following providers…" (Doc. 146 at 1.) The current excerpted medical records which are the subject of the present controversy total 64 pages. (Doc. 167-1 at 1-60; Docs. 199 and 199-1 and Docs 201-2 and 201-3.)

[2] During its review of the records, the Court found that certain pages listed in the chart were not in the record. The Court requested that Defendant supplement the record with these pages and Defendant complied. (Docs. 199, 199-1, 201-2 and 201-3.)

Defendant's Memorandum Regarding Medical Records Exhibits (Doc. 184) which attaches a copy of Defendant's chart but adds a column where Plaintiff's responses to each exhibit are summarized. (Doc. 184-1 at 1-37.) Defendant filed a Memorandum in Reply to Plaintiff's Arguments in Opposition to Defendant (sic) Medical Record Exhibits (Doc. 191).

As narrowed, there are approximately 64 pages of medical records at issue, grouped in 58 blocks on Defendant's chart. (Doc. 168 at 9-28).[3] Each block summarizes the excerpt which Defendant wants to introduce, (by Defendant's exhibit number and Bates page number), along with Defendant's contention as to its relevance, and its rationale for how it survives Plaintiff's motion. (*Id*.) Of the 58 excerpts, Plaintiff fully waived his objection to 12 of those (numbers 1, 2, 6, 12, 17, 19, 21, 34, 36, 39, 40 and 55), leaving 46 at issue.

The Court has carefully considered the proposed exhibits, the arguments of the parties and the applicable law and, for the reasons which follow, sustains in part, overrules in part and defers in part Plaintiff's Motion. The Court provides a chart at the end of this decision stating its ruling as to each of the objections. The Court has numbered each excerpt block (1-58) and, for sake of simplicity, will refer in its discussion and rulings to these record excerpts by the excerpt numbers given in the Court's chart.

## FACTUAL BACKGROUND

Plaintiff alleges that he is a "profoundly deaf, illiterate, and language-deprived individual" (Doc. 77 at 1) who suffered a gunshot wound in April 2017 which rendered him a paraplegic. (Doc. 48-1 at 5.) He thereafter sought and "received extensive medical care at the

---

[3] Three pages (Docs. 167-1 at 58-60; Bates Numbers 8217, 8218 and 8228) are attached to Defendant's submission but are not on its chart. Because these documents are not on the Defendant's chart with an explanation of their relevance and why they are admissible in the face of Plaintiff's challenge, they will not be considered by the Court. There were certain documents listed on the chart which were not originally submitted but were submitted in supplemental filings (Docs. 199 and 199-1 and Docs. 201-2 and 201-3). These are considered.

Baton Rouge General wound care clinic" ("BRGWC") from June 14, 2017 until September 8, 2017. (Doc 77 at 1.)

According to Plaintiff, he "communicates primarily in American Sign Language ('ASL') and has a very limited understanding of English." (*Id*.) Plaintiff sues Defendant as the owner and operator of the BRGWC (Doc. 21 at 2-3) charging that "Defendant failed to provide him with adequate auxiliary communication aids and services he needs to communicate effectively in a medical setting" (*id*. at 2) in violation of Title III of the Americans with Disabilities Act, 42 U.S.C § 12181 ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"); and Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116. (*Id*. at 2-3.) Plaintiff asks for injunctive relief and damages.

## SUMMARY OF ARGUMENTS OF THE PARTIES

In his original motion (Doc. 128-1 at 1-6), Plaintiff argued that his medical records from facilities other than Defendant's are irrelevant in that they contain complaints, examinations, diagnostic workups and treatments for complaints, injuries and illnesses which are not at issue here. The issue, insists Plaintiff, is what happened (or didn't happen) at Defendant's facility. He reiterates the relevance argument in his response. (Doc. 184 at 8.) Plaintiff also argues that certain entries in the records are independently irrelevant to any conceivable issue in the case. (Doc 184 at 1, referring to the entry regarding Plaintiff being hit in the nose by his uncle and a GoFundMe campaign started on Plaintiff's behalf).

Second, Plaintiff maintains that, even if relevant, the documents contain hearsay, and in some instances, multiple levels of hearsay, and none of the exceptions to the hearsay rule posited by Defendant (namely, Rules 803(4) and 803(6)) apply. (*Id*. at 4-6.) Third, in the alternative, even if minimally relevant and either not hearsay or subject to an exception to the hearsay rule,

the probative value of the evidence is far outweighed by the prejudicial potential for confusing and misleading the jury. In addition, considering this evidence will cause an undue delay in the trial by having to try multiple mini-trials on side issues raised by the records. (*Id*. at 8-9; 184-1 at 1- 37.) The excerpts dealing with Plaintiff's ability to communicate without an interpreter are untrustworthy and misleading in the absence of a live witness who can be challenged on cross examination. (Doc. 184-1 at 1-37.)

Fourth, Plaintiff argues that, in some instances, the entries constitute opinion testimony and are inadmissible since no Fed. R. Civ. Pro. 26 report was produced by Defendant, and any lay opinions given in these excerpts would be inadmissible since a live witness is not going to testify at trial as to these opinions and be able to provide the foundational testimony required under Fed. R. Evid. 701. (*Id*.) Further, argues Plaintiff, he will be severely prejudiced by not being able to cross examine those who authored the excerpts.

In compliance with the Court's order, Defendant provided a chart specifying by exhibit and page number the proposed excerpt, its relevance, and the basis for its admission in the face of Plaintiff's hearsay and other objections. (Doc. 168 at 9-28.)  Defendant responds generally to Plaintiff's relevance challenge by arguing that the records are highly relevant to rebut the main contentions of Plaintiff's case, namely, that "(1) Mr. Francois's 'preferred' mode of communication at medical appointments is via an in-person interpreter; (2) Mr. Francois is essentially illiterate or has very little literacy as it pertains to written English; [and] (3) **Mr. Francois suffered worsening pressure wounds as a result of ineffective communication provided to him (using VRI instead of in person interpreters) during admissions to BRG and BRG Wound Care.**" (Doc. 168 at 6, emphasis in original.) In addition, these entries rebut and impeach the contention of Plaintiff's expert "Dr. Judy Shepherd-Kegl, that in-person

5

interpreters are the *only* effective communication (sic) for him in a medical setting." (*Id*., italics in original; see also pages 6-9.)

Furthermore, argues Defendant, Plaintiff contends his pressure sores and decubitus ulcers were made worse as a result of Defendant's failure to provide a sign language interpreter which prevented him from getting "information as to how to prevent the bedsores from growing or how to avoid contracting new bedsores." (*Id*. at 8, quoting from ¶ 33 of Plaintiff's Complaint.) Some of the records belie this contention in various ways, e.g., by showing that he was properly instructed on wound care with an interpreter present and was nonetheless non-compliant in following instructions on how to care for his wounds and that he simply disliked the debridement therapy. (Id. at 8-9; see also reply brief, Doc. 191 at 4-5.)

As to the alleged hearsay objection raised by Plaintiff, Defendant responds first, because the medical records are certified in compliance with La. R.S. 13:3714(A), they are admissible without regard to whether they contain hearsay. (Doc. 168 at 2-4.) In addition, argues Defendant, the records are either not hearsay as set out in Fed. R. Evid. 801(d)(2) (*id*. at 5-6) and/or fit into the exceptions set out Fed. R. Evid. 803(4) and/or 803(6) (*Id*. at 4, 9-28). In its reply and in its chart, Defendant also argues that the records are not offered for the truth of the statements contained therein but rather are for the purpose of showing that "**Plaintiff had NOTICE of information bearing on chronic prevention, notice provided via in-person interpreter**…" (Doc. 191 at 2., emphasis in original), and to show not the truth of the history taken, but that a history could be taken from Plaintiff in the absence of an in-person interpreter (*id*. at 3-4).

In response to Plaintiff's objection regarding expert or lay opinion testimony, Defendant suggests that a limiting instruction should suffice to allay any prejudice to Plaintiff. (*Id*. at 6.) Finally, in argument made in its chart, Defendant maintains that much of the objected to material

should be allowed to impeach anticipated testimony of Plaintiff's lay and expert witnesses such

as, for example, that Plaintiff preferred to have an in-person interpreter during in-patient

hospitalizations. (Doc. 168 at 9, et seq.)

## STANDARD

As this Court has previously explained:

> Generally, motions *in limine* are disfavored. *See, e.g.*, *United States v. Dish Network, L.L.C.*, No. 09-3073, 2015 U.S. Dist. LEXIS 17055, at *5 (C.D. Ill. Nov. 30, 2015); *United States v. Amor*, No. 14-20750-CR-LENARD/GOODMAN, 2015 U.S. Dist. LEXIS 144291, at *3, 2015 WL 6438479, at *1 (S.D. Fla. Oct. 23, 2015); *Mahmoud v. Rambosk*, No. 2:13-cv-63-FtM-38DNF, 2014 U.S. Dist. LEXIS 98700, at *3, 2014 WL 3593763, at *1 (M.D. Fla. July 21, 2014); *Mi-Jack Prods. v. Intl. Union of Operating Engrs., Loc. 150*, No. 94 C 6676, 1995 U.S. Dist. LEXIS 16930, 1995 WL 680214 at *1 (N.D. Ill. Nov. 14, 1995). Instead, "[b]y deferring evidentiary rulings until trial, courts can properly resolve questions of foundation, relevancy, and prejudice." *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, No. 02 C 3293, 2005 U.S. Dist. LEXIS 4502, at *3, 2005 WL 289967, at *1 (N. D. Ill. 2005). Such a result aligns with the Rules' broad tenor: "In fairness to the parties and their ability to put on their case, a court should exclude evidence in limine only when it is clearly inadmissible on ***all*** potential ground." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010) (emphasis added); *cf. Luce v. United States*, 469 U.S. 38, 41, 105 S. Ct. 460, 463, 83 L.Ed. 2d 443 (1984) (emphasizing how a "court must know the precise nature of ... testimony" in performing the balancing required under Rule 609(a)(1)).

*Tucker Mgmt., LLC v. United Nat'l Ins. Co.*, No. 13-CV-626-JWD-RLB, 2016 WL 8261722, at

*2 (M.D. La. July 8, 2016)

Nonetheless, the parties have asked the Court to rule in advance of trial on Plaintiff's

objections to certain parts of his medical records which Defendant intends to introduce. To the

extent the Court is able to do so, it will rule on those objections. Where it is impossible to do so,

it will defer the ruling until time of trial.

## ANALYSIS

Defendant has broken the contested exhibits into 58 blocks on its chart.[4] As mentioned above, Plaintiff has withdrawn his objection to 12 of these (1, 2, 6, 12, 17, 19, 21, 34, 36, 39, 40 and 55), leaving 46 contested excerpts. The Court provides a ruling herein in chart form on each of the 46 contested excerpts at issue. However, for context and in support and explanation of the Court's rulings, the Court makes these general observations.

*a. Relevance*

Plaintiff spends very little of his argument on the issue of relevance, concentrating on his other arguments. (Doc. 184 at 8.)

> "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Relevant evidence is admissible unless any of the following provide otherwise: the United States Constitution; a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402. "Irrelevant evidence is not admissible." *Id.*

*Tingle v. Hebert*, No. CV 15-626-JWD-EWD, 2018 WL 2287028, at *5 (M.D. La. Apr. 23, 2018).

> In determining relevance, the Court should view the issue of relevance broadly.
>
> Evidence need not be conclusive of a material issue in order to be admitted. Fed. R. Evid. 401 defines relevant evidence as any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See, e. g., *United States v. Ashley*, 555 F.2d 462 (5th Cir. 1977); *United States v. Carter*, 173 U.S.App.D.C. 54, 522 F.2d 666 (1975). Generally, all relevant evidence is admissible, under Fed. R. Evid. 402, unless " its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentations of cumulative evidence." Fed. R. Evid. 403. Under the Federal Rules of Evidence, the trial judge has broad discretion to admit evidence, and the exercise

---

[4] The excerpts being offered by Defendant are set out, pursuant to the Court's order, in Defendant's chart. The Defendant also provided the documents from which the excerpts were drawn. (Docs. 167-1, 199, 199-1 and 201-2 and 201-3.) As to each excerpt where the Court denies Plaintiff's motion, it is only the excerpts, and not the entire document, which will be allowed into evidence.

of that discretion will not be reversed unless a clear abuse of discretion is shown. See, e. g., *United States v. Grimm*, 568 F.2d 1136 (5th Cir. 1978); *United States v. Bibbs*, 564 F.2d 1165 (5th Cir. 1977).

*United States v. Madera*, 574 F.2d 1320, 1322 (5th Cir. 1978)

To the extent that Defendant's proposed excerpts inform the issues outlined by Defendant as summarized above and briefed at Doc. 168 at 6-9, the Court finds that they are, for the most part, relevant. At the heart of Plaintiff's case on liability is the effectiveness of communication between Plaintiff and Defendant's employees. A second issue is whether or not the technique(s) used by Defendant to communicate with Francois played a role in the aggravation of his wounds and pressure sores. The medical record entries submitted by Defendant go, for the most part, in one way or the other, to these two issues.

As to the first issue, Defendant insists that many of these entries are "not offered to prove effectiveness or quality of communication with Plaintiff" (Doc. 168 at 10). Rather, they are offered for other purposes, such as to show that Plaintiff was using a dry-erase board rather than an in-person interpreter while an in-patient in the hospital (*id*. at 9); that he used written questions to communicate (*id*. at 10); and to impeach his testimony that he "prefers" in-person interpreters.

As to the second issue, these excerpts address the cause of Plaintiff's damages by showing, *inter alia*, the status of his wounds at various points in time, instructions given to him and family members regarding proper home care for his wounds, and the lack of patient compliance with those instructions. (*Id*. at 11-29.) These entries address the issue of causation, i.e. whether the aggravation of Plaintiff's wound were caused by Defendant's failure to adequately communicate with Plaintiff or, on the other hand, by Plaintiff's failure to follow wound care instructions given to him by the providers, which instructions are referenced in the records. While there may be other reasons to exclude some of these entries from evidence, there

9

is no doubt that the excerpts addressing these general issues are relevant. Unless ruled irrelevant in its Chart ruling, the Court finds that the excerpts are relevant.

b. *Hearsay or not – Rule 801(d)(2) and 801(c)(2)*

Defendant argues that many of the excerpts (items 3, 4, 7, 8, 10, 11, 13, 14, 15, 18, 22, 24, 25, 27, 28, 29, 30, 33, 44, 47, 50, 54, and 58)[5] are not hearsay at all under Rule 801(d)(2) because the statements in question are "offered against an opposing party and (A) [were] made by the party in an individual or representative capacity" or "(C) [were] made by a person authorized to make a statement on the subject" or (D) [were] made by a party's agent . . . on a matter within the scope of that relationship and while it existed." (Doc. 168 at 9-28.) While not noted in its chart,  Defendant also argues in its reply that some of these entries are not being offered for the truth of the statements contained in them but for another purpose (e.g., to give "notice")  and hence do not meet the definition of hearsay under Rule 801(c)(2). (Doc. 191 at 1-4.)

With respect to 801(d)(2), Defendant ignores altogether that the statement made by the party (i.e. Plaintiff or his alleged representative) is itself recounted by another out of court declarant (the record maker) and is hearsay. Before the Court can even reach the statement allegedly made by the party, Defendant must show that the record entry itself is not hearsay or is subject to an exception. In many instances, Defendant has failed to do so. Secondly, in some instances, the statement attributed to Plaintiff was either not made by Plaintiff (as where, for instance, in excerpt 18, Bates 7989, the statement is made by Plaintiff's grandmother), or it is entirely unclear who made the specific statements Defendant seeks to introduce (as where, for example, in excerpt 7, Bates 7969, the patient, the patient's mother and the patient's grandmother

---

[5] The Court does not include the items where Plaintiff waived his hearsay objection.

are all listed as the "source of patient information". See also, excerpt 5, Bates 7957: "Source of history: the patient, grandmother and chart review"). In addition, while Defendant argues that the statements of Plaintiff's grandmother, mother and Paula Rodriguez can be treated as Plaintiff's statements for purposes of this Rule, Defendant has failed to make a sufficient showing that they were Plaintiff's agent, employee or authorized representative under Rule 801(d)(2).

Defendant argues for some entries, that they are being introduced not for the truth of the statement but to show notice "on information bearing on chronic wound prevention." (Doc. 191 at 2.) An example pointed to by Defendant is entry 22, Bates 8006 which states: "OT educated pt. on the importance of trying to stay out of bed and upright in chair or recliner as much as possible outside of therapy hours. He verbalized understanding and was agreeable to staying up in chair after OT session this PM until after dinner."

It is axiomatic that "an out-of-court statement only constitutes hearsay if its relevance depends on the truth of the matter asserted by the out-of-court declarant." 30B Jeffrey Bellin, *Federal Practice & Procedure* § 6718 (2020 ed.). Despite Defendant's protests to the contrary, these statements are being offered for the truth of the statements since they are only relevant if they are true, e.g. that Plaintiff was told about steps that could be taken to improve his wound condition and that he verbalized an understanding of those instructions. This is fundamentally different from the documents Defendant compares this to, i.e. ones where, whether true or not, Defendant was made aware of complaints that would arguably trigger a duty to respond. Thus, this proffered exhibit and similar excerpts are hearsay.

    c.   *Hearsay – Applicability* vel non *of La. R.S. 13:3714(A)*

In support of its argument that certified copies of medical records are admissible in this case, Defendant cites La. R.S. 13:3714(A) and this Court's decisions in *Ariza v. Loomis*

*Armored, U.S., LLC*, No. 13- 419, 2016 WL 297702, at n.6 (M.D. La. January 22, 2016) and

*Williams v. Sanders*, No. 13-97, 2016 WL 81272 * 1 (M.D. La. January 7, 2016). La. R.S. (Doc.

168 at 2-4.) This same argument was made by Defendant in this case (Doc. 125) in connection

with another motion by Plaintiff (Doc. 124) and rejected by the Court. (Doc. 185; *Francois v.*

*General Health System*, No. 3:17-CV-533, -- F. Supp. 3d ---, 2020 WL 1065721, at **3-4 (M.D.

La. March 3, 2020)).

La. R.S. 13:3714(A) states:

A. Whenever a certified copy of the chart or record of any hospital, signed by the
administrator or the medical records librarian of the hospital in question, or a copy
of a bill for services rendered, medical narrative, chart, or record of any other state
health care provider, as defined by R.S. 40:1299.39(A)(1) and any other health care
provider as defined in R.S. 40:1299.41(A), certified or attested to by the state health
care provider or the private health care provider, is offered in evidence in any court
of competent jurisdiction, it shall be received in evidence by such court as prima
facie proof of its contents, provided that the party against whom the bills, medical
narrative, chart, or record is sought to be used may summon and examine those
making the original of the bills, medical narrative, chart, or record as witnesses
under cross-examination.

Defendant misreads *Ariza* and *Williams*. Neither case holds that this Louisiana statute can

somehow avoid or overcome conflicting Federal Rules of Evidence. In *Ariza*, a case based on

both Louisiana as well as federal substantive law, (Docket No. 13-419, Doc. 1 at 1),  the Court

*granted* the motion in limine to exclude the medical records at issue based on the Federal Rules

of Evidence hearsay rules and found that the records did *not* fall into the business records

exception to that rule. *Ariza*, 2016 WL 297702 at *4-5 ("Notes scratched on a pad by a doctor or

an email written at a patient's request are not the kind of official records to which Rule 803(6)

applies, for they are too informal and too unique to the individual to be classified as records of a

regular business activity. However, according to Plaintiff, a foundation may still be laid as to

Exhibits 6 and 8, as the doctors who drafted those notes are scheduled to testify.") In that

12

connection, the Court noted that La. R.S. 13:2714(A) might possibly be used to assist in laying that foundation at trial. (*Id*. at n. 6.)

Similarly, in *Williams*, there was no hearsay issue. There, the issue was the *relevance* of the pro se plaintiff's medical records. The Court held that its finding that plaintiff's medical records were relevant in showing injuries that demonstrated excessive force was "buttressed" and "strengthened" by the full control over those records exercised by the defendant's employer and the employer's certification of those records under 13:3714(A). *Williams*, 2016 WL 81272 at *1. The Court went on to hold that, to be admissible, however, the plaintiff would need to lay a proper foundation for the introduction of the records at trial. *Id*. at *2.

"It is well-settled that federal law governs the admissibility or other use of evidence in a federal proceeding, even if the evidence was obtained in violation of state law." *United States v. Edwards*, 79 F. Supp. 2d 645, 648 (M.D. La. 1999) (citations omitted). "The principle that governs today is stated easily. . . . [I]f a[] [Federal Rule of] Evidence [] covers a disputed point of evidence, the Rule is to be followed, even in diversity cases, and state law is pertinent only if and to the extent the applicable Rule makes it so or it provides the federal court with guidance in the construction and application of the Evidence Rules."  Offered for the "Truth of the Matter Asserted", 19 Charles A. Wright and Arthur R. Miller, *Federal Practice & Procedure* § 4512 (3d ed. 2020); *See also, Jacked Up, LLC v. Sara Lee Corp*., 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018), *aff'd*, No. 11-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018) (stating that, even "[i]n a diversity case, the admissibility of evidence is a procedural issue governed by federal law." (citing *Reed v. Gen. Motors Corp*., 773 F.2d 660, 663 (5th Cir. 1985)); *Dawsey v. Olin Corp*., 782 F.2d 1254, 1262 (5th Cir. 1986) ("[W]e need not concern ourselves with the Louisiana statute because the statute does not apply in federal court; questions concerning the admissibility

of evidence in federal court are governed by the Federal Rules of Evidence.") (citing Fed. R. Evid. 1101; *Pollard v. Metropolitan Life Insurance Co*., 598 F.2d 1284, 1286 (3d Cir. 1979)). Thus, in determining whether the statements made in the medical records are admissible, the Court turns to the Federal Rules of Evidence.

      *d.   Statement Made for Medical Diagnosis or Treatment - Rule 803(4)*

      As to many of the excerpts, Defendant contends that Rule 803(4) applies as an exception to the hearsay rule, arguing that the statement "is made for – and is reasonably pertinent to – [Plaintiff's] medical diagnosis and treatment and describes medical history; past or present, symptoms or sensations; their inception; or their general cause." With respect to any statement found in the medical records made by someone other than the patient, this exception does not apply. This Court has previously stated: "The exception contained in Federal Rule of Evidence 803(4), which permits the admission of statements made for the purposes of medical diagnoses or treatment, is limited to statements made by the person seeking medical treatment or care." *Gray v. Energy XXI GOM LLC*, No. CIV.A. 12-165-JJB, 2013 WL 4011990, at *6 (M.D. La. Aug. 5, 2013) (citing *Field v. Trigg County Hosp., Inc.*, 386 F.3d 729, 735–36 (6th Cir. 2004); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996); *Stull v. Fuqua Industries, Inc*., 906 F.2d 1271, 1273 (8th Cir. 1990); *Bulthuis v. Rexall Corp*., 789 F.2d 1315, 1316 (9th Cir. 1985).) *See also, Tucker v. Nelson*, 390F. Supp. 3d 858, 862 (N.D. Ohio 2019) (holding exception only applies to statements made by the one actually seeking or receiving medical treatment); *Truschke v. Phyllis Chaney, LPN*, No. 5:17-cv-93, 2019 WL 1960344. at *5 (S.D. Ga. May 2, 2019) (statements made by doctors to plaintiff are not admissible pursuant to the Fed. R. Evid. 803(4)).

An example of such a proffered excerpt where Defendant claims 803(4) applicability (Doc. 184-1 at 5) but does not qualify is excerpt 8, Bates 7970: "Discussed with patient if medication non-compliance continues, we will be unable to continue to provide medical care for the patient." Because this and similar statements proffered by Defendant are not made by the person seeking medical treatment, Plaintiff, 803(4) does not apply.

With respect to statements made by the patient, ". . . Rule 803(4) does not require that each statement be 'necessary' for medical treatment; it requires only that statements be "reasonably pertinent to diagnosis or treatment.'" *United States v. Santos*, 589 F.3d 759, 763 (5th Cir. 2009). *See also* Reasonably Pertinent to Treatment or Diagnosis, 30B Jeffrey Bellin, *Federal Practice & Procedure* § 6845 (2020 ed.) ("The text of Federal Rule of Evidence 803(4)(A) requires an objective inquiry into whether the proffered statements were 'reasonably pertinent' to the medical provider's diagnosis and treatment tasks. Importantly, the proffered statement does not need to be necessary to treatment, only reasonably related to that purpose.").

e. *Records of a Regularly Conducted Activity – Rule 803(6)*

Defendant claims that certain excerpts fall within the 803(6) exception: "records of a regularly conducted activity." As a general rule, "[m]edical records are routinely admitted as evidence under the business records exception to the hearsay rule. Therefore, the medical records are admissible if it was kept in the course of regularly conducted business activity." *Logan v. Westfield Ins. Co.*, No. 17-29, 2020 WL 406785, at *3 (W.D. La. Jan. 24, 2020). *See also Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) ("Rule 803(6) provides a hearsay exception for records kept in the course of *any* regularly conducted business activity, which would include hospitals." (emphasis in original, citations omitted)).[6]

---

[6] However, as discussed elsewhere in this ruling, medical records qualifying under this exception may nonetheless be excluded for lack of trustworthiness or for their potential to mislead or confuse the jury or create undue prejudice.

Defendant contends that essentially every entry it has submitted is subject to the 803(6) exception by the mere fact that the records are certified by the records custodian. (Doc. 168 at 2, 9-28.) Defendant argues that "the Eastern District Court has further specifically ruled that the statement of the custodian affirming that the certification is made in the custodian's ordinary course of business qualifies the medical record as an exception to the hearsay rule under Federal Rule 803(6)." (*Id.*, *citing Rodgers v. Hopkins Enters. of Miss., LLC*, No. 17-6305, 2018 WL 6335778 (E.D. La. Dec. 5, 2018) and *Wright v. National Interstate Ins. Co*., No. 16-16214, 2017 WL 3686562 (E.D. La. Aug. 25, 2017).)  Neither case stands for the broad and immutable proposition for which Defendant cites them. For instance, with respect to any statements made in the medical records ascribed to Plaintiff or any other "outsider", this exception does not apply. As stated by this Court in connection with another ruling in this case,

> "An important distinction arises when a business record contains a hearsay statement of an 'outsider' to the business. If the source of the statement is an outsider, Rule 803(6) "does not, by itself, permit the admission of the business record." *Wilson v. Zapata Off-Shore Co*., 939 F.2d 260, 271 (5th Cir. 1991).  "To be admissible, the outsider statement must itself qualify for admission over a hearsay objection, for example by satisfying a separate hearsay exception." 30B Charles A. Wright and Jeffrey Bellin, Federal Practice & Procedure § 6866 (2018). *See also, Bradley v. Sugarbaker*, 891 F.3d 29, 35 (1st Cir 2018) (refusing to apply Rule 803(6) exception to patient's statement in hospital record).

*Francois*, -- F. Supp. ---, 2020 WL 1065721, at *5. *See also* Bellin, *supra*, § 6866 ("As a prototypical example of the outsider principle, a patient's description of his medical history could not be admitted under Rule 803(6) even though the description appeared in the business records of a hospital.").

This principle applies not only to the statements of Plaintiff in the records but also to other "outsiders" such as Plaintiff's mother, grandmother and Paula Rodriguez. *See, e.g.* entry 27, Bates 8026: "grandmother states she has two options…"

*f.   Expert and lay opinion testimony*

At the heart of the present case is the question of Plaintiff's ability to adequately communicate with the health care providers employed by Defendant. Each side has an expert addressing this question. Each party filed a *Daubert* motion to exclude the others' expert. (Docs. 46 and 48.) For oral reasons given (Doc. 127), the Court granted in part and denied in part both motions. (Doc. 121.) In addition, it is anticipated that both sides will have lay witnesses who will testify as to their perceptions of Plaintiff's ability or inability to effectively communicate with Defendant's employees in different scenarios.

Plaintiff complains that Defendant is attempting through these medical records to improperly insert expert and lay opinion evidence. (Doc. 184 at 3, 6-8 and Doc. 184-1 at 1-37.) No expert reports have been provided as to any of these individuals whose views are captured in the proffered records and, argues Plaintiff, their opinions should therefore not be allowed. To the extent that these constitute lay opinions, it will be impossible for Defendant to show that the opinions are "rationally based on the witness's perception," as required by Fed. R. Evid. 701(a) since no witnesses will testify at trial in connection with the records. Therefore, these opinions should not be allowed. (Doc. 184 at 7, *citing United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002).)

Defendant denies such phrases as "poor historian" are expert opinions (Doc. 191 at 6) but maintains that, to the extent that they are, any prejudice to Plaintiff can be cured with a limiting instruction. (Doc. 191 at 6.) Defendant fails to address Plaintiff's argument regarding lay opinion evidence.

To the extent that any of the statements call for expert testimony, the Court rules that they are excluded since none of the record keepers involved in the proffered exhibits have been listed

as experts, nor has Defendant provided Rule 26 expert reports. But even if their statements constitute merely lay opinion, Rule 701(a) requires that the opinion be one "rationally based on the witness's perception."  Before the witness is allowed to give lay opinion testimony, a foundation must be laid which demonstrates that the factual basis upon which the opinion is given is rationally based on the witness's perception and absent that foundation, the opinion is inadmissible. *Baxter v. Anderson*, No. 3:16-CV-142, 2018 WL 1959596, at *3 (M.D. La. Jan. 25, 2018) ("[I]t is impossible without context and foundation to rule on the admissibility of such [Rule 701] opinion testimony in the abstract."). *See also United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2003) ("[A] witness offering a lay opinion must base his opinion on his own personal knowledge, which must be established to the court and jury. 'When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701… because there is no way for the court to assess whether it is rationally based on the witness's perception." (quoting *United States v. Rea*, 958 F.2d 1206, 1212 (2d Cir. 1992)); "Rationally Based on the Witness's Perception", 29 Victor J. Gold, Federal Practice & Procedure § 6254 (2020 ed.) ("While Rule 701 requires that lay opinion must be rationally based on perception, the provision is silent as to whether the proponent of the opinion must elicit the details concerning the witness' perceptions before the opinion is given. However, the courts have held that such a foundation must be established before the opinion is admissible. The foundation must refer to the specific matters perceived; vague, general statements about the basis for lay opinion are insufficient.").

Furthermore,

Even if a witness has perceived a matter with his senses, the second component of personal knowledge requires that the witness has the experience necessary to comprehend those perceptions. In many cases, comprehension requires no more experience than that presumably universal to the human condition. However, where

18

the lay witness observes matters that can be comprehended only with specialized experience, it may be necessary to demonstrate that the witness has such experience.

Gold, *supra*, § 6254.

Here, because of Plaintiff's alleged deafness and intellectual limitations, whether or not Plaintiff understood what was being said and, if so, the extent of that understanding is, as mentioned above, the main issue in the case and the subject of expert testimony on both sides. So, when a nurse writes "Patient deaf but can communicate via writing back and forth…" (Doc. 167-1 at 17, excerpt 17, Bates 7989), this is an opinion. What training or experience does the writer have in communicating with a deaf person? What factors led the nurse to reach this conclusion? What was the level of communication? What difficulties were encountered in the communication? If there was an interpreter present, what were that person's qualifications? These questions and many others are unanswered and unanswerable since no live witness will be presented. They are questions central to the case.

Similarly, when an entry reads, "Patient in bed communicating with dry erase board and sign language through family member at bedside" (Doc. 167-1 at 3, excerpt 3, Bates 7965), this is expressing an opinion. What was being communicated on the dry erase board and what was being communicated by sign language to relatives? How effective was the communication? Etc. Because Defendant is not calling the writer to testify, there is no way for Defendant to make the requisite factual showing regarding what he or she perceived and whether the writer has sufficient experience or expertise to give this opinion rationally based on the witness's perception. Further, were the Court to allow this into evidence, there would be no way for Plaintiff to cross-examine the writer and test the level of that experience or the details of what he/she saw to challenge whether Plaintiff was truly "communicating." The limitations of this

19

exhibit are demonstrated by the exhibit itself, which goes on to say, "History limited by communication," (itself, an opinion). (*Id*.) In what way was it limited? Why? The records provide no answers.

Examples of similar excerpts are 3, 4, 5, 10, 11, 13, 14, 15, 16, 18, 22, 24, 25, 38, 44, 46, and 47. Thus, to the extent that these entries are not hearsay or are subject to an exception to the hearsay rule, they are excluded because of an insufficient foundation laid to admit Rule 701 lay opinion testimony. In addition, those entries that deal indirectly with Plaintiff's ability to understand, e.g. those entries that purport to show that Plaintiff was instructed regarding wound care and/or acknowledged understanding those instructions and/or disregarded them, the Court's ruling is the same since they implicitly convey the opinion that the communication was effective. These include excerpts 7, 8, 9, 20, 22, 23, 24, 25, 26, 29, 32, 33, 28, 45, 46, 48, 49, 50, 53 and 54.

There are also excerpts that describe the state of healing of Plaintiff's wound. An example is excerpt 52 (D31, Bates 8214, Doc. 167-1 at 53). That proposed entry reads: "…Patient is also showing steady improvement of his [left] ischium area wound. His wound surface is healing on the wound bed and around the edges." This entry is relevant to the damages and causation issues and is a valid 803(6) exception to the hearsay rule. While it does express an opinion, it does not involve any express or implied opinion regarding Plaintiff's ability to communicate, and therefore is more in the nature of an observation than a matter of interpretation or speculation. Thus, the Court exercises its discretion and denies Plaintiff's motion as to this and similar excerpts. (See, e.g. excerpts 41, 42, part of 43 and 52.)

In closing, the Court must limit its holding. The Court is not finding that, in all cases, medical records are inadmissible or that, in every situation, such documents cannot sufficiently

convey that a deaf patient understood instructions that were given to him. Rather, the Court is merely holding that, under the unique facts of this case—for example, where no corroborating witness subject to cross examination has been or will be called, where the level of understanding is the subject of contradictory expert opinions, where there are a considerably large number of documents at issue that would subject the jury to numerous mini-trials, and where the records are almost completely devoid of any foundation establishing the basis upon which the provider concluded the deaf patient did in fact understand—the records at issue are inadmissible.

### g. *Rule 403 Balancing*

Plaintiff argues that, even if the proposed exhibits are not hearsay, or are subject to a hearsay exception, or are otherwise admissible, they should be excluded Fed. R. Evid. 403.

> Entirely discretionary, Federal Rule of Evidence 403 allows a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. According to the relevant advisory committee, " '[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee note. As case law further explains, "evidence is prejudicial [for purposes of Rule 403] only when it tends to have some adverse effect upon accused beyond proof of fact or issue that justified its admission into evidence, by proving some adverse fact not in issue or exciting emotions against accused." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).

*Tucker Mgmt.,* 2016 WL 8261722, at *1.

Plaintiff argues that, because these 58 medical record excerpts cover multiple different health care providers at different facilities, no one of whom is being called to testify at trial, it will require Plaintiff to litigate multiple "cases within a case" (Doc. 184 at 3), "without the benefit of cross examining the medical professional[s] who wrote down the out of court statement[s]." (Doc. 184-1 at 3.) To the extent any of these documents are relevant, their "relevance is outweighed by the danger of unfair prejudice due to the lack of cross examination."

21

(*Id*. at 4.) Because the witnesses are not being called live, it allows Defendant to "utilize 'back door' expert testimony without the benefit of challenging those opinions on cross examination." (*Id*. at 5-6; *see also id*. at 7, 8, 12, 14, 15, 22, 25, 28, 30, and 35.)

Defendant does little to address Plaintiff's arguments, responding only that there are no expert opinions in the proffered entries and that any prejudice can be remedied with a limiting instruction. (Doc. 191 at 6.) Defendant fails to address at all Plaintiff's argument regarding lay opinion testimony and the practical effect of requiring Plaintiff to try multiple cases within a case without the benefit of cross examination.

As discussed previously, a central issue in this case is how well Plaintiff gave, received and understood information to and from healthcare providers by way of a variety of communication techniques utilized at different times, including using a live interpreter, video remote interpreting, family members and writing. The issue is a complex one and the position of Plaintiff and Defendant on this issue is starkly different, as is the evidence that will be presented on this point through both lay and expert witnesses. While the medical records from Defendant's facilities will be introduced and used by both sides, these records are fundamentally different from those being considered here in that, as to the former, there will be lay witnesses who will testify in connection with the records and events described therein. Plaintiff will therefore have the right to examine or cross examine those witnesses on points such as the details of the interactions and the witness's level of training with deaf or impaired patients. And while both sides have experts who will provide their view of what those records mean on the ultimate question, the experts will have the benefit of the testimony of those who were actually involved in the interactions.

Here, Defendant seeks to introduce the medical records at issue in this motion without any accompanying testimony. As Plaintiff correctly argues, if the records at issue here are admitted, there will be no such ability to cross examine the record makers. Many of these records either directly or implicitly express an opinion on the critical issue of Plaintiff's ability to communicate under various scenarios. While Defendant posits that it is not offering the evidence for that purpose, it is clear that the jury will almost certainly use it as such. While certain of these records may fall into the 803(6) exception to the hearsay rule, the Court must still consider the implications of these rules under Rule 403. In doing so, the Court finds that the potential for the jury being confused or, worse, misled, as well as the unfair prejudice to Plaintiff in being unable to cross examine the record makers is such that those records touching on Plaintiff's communication with providers must be excluded.

> [A]dmissibility of all such entries [under Rule 803(6)] is not assured. First, where indications of lack of trustworthiness are shown, which may result from a lack of expert qualifications or from a lack of factual support, exclusion is warranted. Moreover, inclusion of opinions or diagnoses within the rule only removes the bar of hearsay. In the absence of the availability of the expert for explanation and cross-examination, the court may conclude that the probative value of this evidence is outweighed by the danger that the jury will be misled or confused. This is of particular concern if the opinion involves difficult matters of interpretation and a central dispute in the case, such as causation. Under these circumstances, a court operating under the Federal Rules, like earlier courts, is likely to be reluctant to permit a decision to be made upon the basis of an un-cross-examined opinion and may require that the witness be produced.

*Sims v. State Farm Mutual Automobile Insurance Company*, No. 4:13CV00371, 2016 WL 3511712, at *3 (W.D. Ark. Jan 13, 2016) (quoting McCormick On Evidence § 293  (John W. Strong, Ed., 4th ed. 1992) (citing *Raycraft v. Duluth, Missabe, and Iron Range Ry. Co*., 472 F.2d 27 (8th Cir. 1973)); *see also Nagle v. Gusman*, No. CV 12-1910, 2016 WL 560688, at *5 (E.D. La. Feb. 12, 2016) ("The average juror does not have the specialized knowledge or experience necessary to understand or interpret a patient's medical records." (citing  *Greeno v. Daily*, 414

F.3d 645, 658 (7th Cir. 2005) (noting that understanding medical records and patient treatment

likely requires expert testimony); *Fowler v. Carrollton Pub. Library*, 799 F.2d 976, 982 (5th Cir.

1986) (holding that a district court erred in admitting medical records "with no accompanying

expert explanation of their significance")); *Sims, supra*, quoting Christopher B. Mueller & Laird

C. Kirkpatrick, Modern Evidence, § 8.45 (1995) ("Where the physician who made the diagnosis

testifies, or where another with firsthand knowledge testifies, admitting reports reflecting

difficult, elaborate, or unusual diagnoses seems easier to justify. Without such testimony, risks of

confusing the issue or misleading the jury are likely to justify exclusion under FRE 403.").

Included in these records are a number of excerpts where the recorder indicates that that

the patient and/or the patient's relative was instructed on some aspect of wound care. This kind

of entry is relevant to damages and causation. Plaintiff argues that this kind of entry is intended

to prove Plaintiff's comparative fault which is not a defense in this kind of case. (Doc. 184-1 at

8-9.) Defendant responds that it is not offering this evidence to establish comparative fault but

rather on the issue of causation and to counter Plaintiff's argument that he was unable to learn

about proper wound care. (Doc. 191 at 4-5.) As stated above, the entries are relevant to the issue

causation. But this does not answer the question of whether they suffer from the potential for

confusing or misleading the jury as previously discussed in connection with other kinds of

entries.

An example of this kind of record is excerpt 24 (D28, Bates 8011) which reads, in

pertinent part:

> Patient nodded head that he understood importance of following a bowel program,
> as well as risks of developing pressures (sic) sores with poor positioning in bed and
> lack of movement. Encouraged patient to have more awareness of his bodies (sic)
> needs with skin checks, proper diet and movement.

Patient and patient's grandmother nodded head in understanding of self-care needs upon discharge." Part of the reason Defendant seeks to introduce this entry is to impeach the testimony of Plaintiff, Plaintiff's lay witnesses and Plaintiff's expert that Plaintiff was compliant with his wound care instructions. (Doc. 184-1 at 16.) The first and third entries raise the 701 and 403 concerns already discussed above and are excluded. The second sentence is more problematic in that it only concerns what the recorder told Plaintiff and his grandmother. However, even if isolated, it suggests, without the ability of Plaintiff to challenge this assumption on cross examination, that Plaintiff received and understood the instruction. Thus, because of the potential for misleading and confusing the jury, the second sentence is excluded as well. Thus as to the entries which purport to show that Plaintiff (or Plaintiff and someone else) was/were instructed on wound care, the Court finds that the probative value of these is outweighed by the prejudicial effect, which, as the Court previously mentioned, is compounded by the inability of Plaintiff to cross examine the recorders.

There is a separate reason that some of the proffered exhibits may confuse or mislead the jury: in a number of the entries, the information charted is coming from multiple sources (e.g. Plaintiff, grandmother, mother, Paula Rodriguez), and it is impossible to determine how much of the information charted came from Plaintiff. See *Petrocelli v. Gallison*, 679 F.2d 286, 289–91 (1st Cir. 1982) (finding that two entries in hospital record stating that the nerve was previously severed, the most critical issue in case, were properly excluded; it was impossible to determine whether patient or physician was source of information, and plaintiff made no attempt to depose or otherwise seek clarification from physicians).

Defendant suggests that these issues can be resolved with a limiting instruction and likens the case to the Court's ruling in allowing emails from Ms. Rodriguez into evidence, with a

limiting instruction, to show notice. (Doc. 191 at 6, citing Doc. 166.) The Court disagrees that these are comparable. In the case of the Rodriguez emails, Ms. Rodriguez will testify at trial and can be cross examined while here, cross examination of those who created the records is not possible. Here, the Court finds that a limiting instruction would not sufficiently cure the concerns generated by the admission of these exhibits.

Finally, because there are 58 separate excerpts by multiple providers at multiple facilities, the Court also agrees with Plaintiff that allowing many of these into evidence would potentially require numerous mini-trials within the main trial. The Court finds that, under these unique facts, this would, to use the words of Rule 403, waste time and cause undue delay. The Court's rulings on each entry is set out in the Chart at the conclusion of this decision.

### h. Impeachment

Defendant maintains that the vast majority of the proposed entries[7] can properly be used for impeachment. (Doc. 168 at 6-7.) For instance, Defendant intends to use the statements of Plaintiff, Leona Deemer and Paula Rodriguez reflected in the medical records to impeach their anticipated in court testimony. (*Id*. at 6.) In addition, Defendant contends the in-court expert testimony of Plaintiff's expert, Judy Shepherd-Kegl "that in-person interpreters are the *only* effective communication for [Plaintiff] in a medical setting" can be impeached by some of the proposed records. (*Id*., at 6-7, emphasis in original.) While Plaintiff seems not to take issue with the proposition that extrinsic evidence can be used to impeach a witness's in court testimony,[8] he

---

[7] Excerpts 3, 4, 5, 7, 8, 9, 11, 13, 14, 15, 16, 18, 20, 21, 22, 23, 24, 25, 26, 28, 33, 35, 38, 42, 43, 44, 45, 46, 47, 48, 49, 59, 51, 53, 56 and 58. In some of these excerpts, Defendant did not argue directly for impeachment but this was plain from Defendant's comments. (Excerpts 3, 4, 21, 28, and 58.)

[8] Indeed, in one instance, Plaintiff states that "[a]s to purported party admissions by Ms. Deemer and Mr. Francois, Plaintiff concedes that these statement (sic) is sufficient (sic) specific that Defendant should be permitted to use the page to impeach Ms. Deemer and Mr. Francois, if appropriate and somehow relevant." Entry 20, Doc. 184-1 at 20; see also entry 13.)

argues that either the extrinsic evidence is excludable on other grounds (like hearsay or on 403 grounds) or that the proffered exhibit doesn't actually contradict the anticipated testimony.

Ultimately, whether a document can be used for impeachment must wait for trial where the Court can hear the foundational question, the answer, determine whether the proper steps for impeachment follow, and whether the document may properly be used for impeachment. However, the Court provides the following for guidance to the parties.

With respect to statements made by anticipated witnesses that are found in the records (e.g., Ms. Deemer, Ms. Rodriguez and Mr. Francois), the statements themselves are not hearsay and may be used to impeach. See Fed. R. Evid. 607, Advisory Note. ("If the impeachment is by a prior statement, it is free from hearsay dangers and is excluded from the category of hearsay under Rule 801(d)(1).") But the statements of these witnesses are embedded in a record created by another out of court declarant, which is itself hearsay. Therefore, in order for the statements to be used for impeachment, there must be an exception to the hearsay statement of the recorder.

With respect to other entries (e.g. descriptions of Plaintiff using the dry erase board to communicate to impeach Shepherd-Kegl's testimony that an in-person interpreter is the only effective way for Plaintiff to communicate in a medical setting), these statements could be used for "impeachment by contradiction"[9] if they were given in court by the eyewitness. But here, Defendant offers that extrinsic evidence by way of records not supported by eyewitness testimony. In such a circumstance, the extrinsic evidence is collateral and cannot be used for

---

[9] "Impeachment by contradiction occurs when a party offers evidence to prove that a fact to which a witness testified is not true. While the Evidence Rules do not explicitly recognize contradiction as a basis for attacking credibility, the admissibility of contradiction evidence can be inferred from the relevance rules and Rule 607."
Bases For Attacking Credibility—Contradiction, 27 Victor J. Gold, *Federal Practice & Procedure* § 6096 (2d ed. 2020).

impeachment if it is inadmissible as hearsay or on other grounds. As one noted commentator

stated:

> [I]t is important to emphasize that contradiction evidence is non-collateral only if it is admissible, not just probative, of a substantive issue in the case. This means that the evidence is collateral if some exclusionary rule renders the evidence inadmissible to prove the substantive fact in question. So in the murder prosecution mentioned in the preceding paragraph, even though extrinsic evidence of the victim's death goes to a key substantive fact, that evidence is collateral if it is inadmissible hearsay. Once more, Rule 403 should produce the same result. Under Rule 403, the probative value of the evidence to prove the substantive fact would be disregarded if it is inadmissible for that purpose while the danger of unfair prejudice would be enhanced by the risk that the jury might misuse the evidence for this inadmissible substantive purpose.

27 Victor J. Gold, *Federal Practice & Procedure* § 6096 (2d ed. 2020).

Therefore, the motion is granted as to Defendant's use for impeachment by contradiction

any excerpt the Court has ruled otherwise inadmissible. As to any other excerpt, the motion is

deferred until trial.

    *i.   Ruling*

### <u>Table of Medical Records Exhibits to be Offered with Specific Positions as to Each's Admissibility</u>

| | Exhibit | Page No. | Hearsay Exceptions | Relevance | Plaintiff's Response | RULING |
|---|---|---|---|---|---|---|
| 1. | D24 - Bone & Joint Clinic Records | 7963 | 803(6)(certification page). | Certification by Medical Records Custodian, certified copies in course of ordinary business. | Plaintiff waives objections. | P does not object. Court will admit if there are any other Bone and Joint records admitted. If not, document is not relevant. |
| 2. | D24 | 7964 | 803(6) (see certification Page) ("discharged from OLOL Rehab on 5/17, being cared for by cousin, grandma, no home health, no wound care..."). | Relevant to Plaintiff's claims of worsening/chronic pressure ulcers as being caused by care of BRG; evidence of care of Plaintiff, a paraplegic, at home during time immediately prior to admission to BRG. | Plaintiff waives objections. | P does not object. Will be admitted. |
| 3. | D24 | 7965 | 801(d)(2)(Party Admission); 803(4) ("Feels nauseous this | Relevant to Plaintiff's claim regarding preferred mode of | Objection. (1) Fails as Business Record. First, trustworthiness is at issue. There is | Motion granted. Foundation required for 701 lay opinion. Also excluded on Rule 403 grounds. |

| | | | | |
|---|---|---|---|---|
| | | morning with same back pain…");<br><br>803(6)(see certification cage)("Patient in bed communication with dry erase board" is non-hearsay. | communication. **Not offered to prove effectiveness or quality of communication with dry erase board. Rather, relevant that patient is using dry erase board as opposed to in-person interpreter during an inpatient hospitalization.** See Complaint, Expert Report and Deposition of Dr. Judy Shepherd-Kegl, Plaintiff alleges that preferred mode of communication is in-person interpreter. | no evidence that an interpreter was present. Second, no evidence that dealing with Deaf individuals is a regular part of the Bone and Joint Clinic's business or occupation and that they had the policies, procedures, and practices in place to accurately communicate with Mr. Francois using the communication modality purportedly employed (in this case a "dry erase board").<br>    Further, 801(d)(2) and 803(4) are not applicable because this is a narrative note by a nurse as to what purportedly occurred (*e.g.* the nurse used a "dry erase board"), not a specific statement by Mr. Francois.<br><br>(2) There is no expert opinion issue.<br><br>(3) Irrelevant and unduly prejudicial. Defendant seeks to argue that its use of a white board  is acceptable because another provider "did it too," but this theory is not supported by any case law or regulatory authority under Title III of the ADA, the Rehabilitation Act, or Section 1557 of the ACA. Permitting the admission of this "evidence" would create a "case within a case" where Mr. | |

| | | | | Francois is obligated to rebut what did/did not happen on 4/14/2017 at the Bone and Joint Clinic, whether use of a "dry erase board" was appropriate at said appointment, and whether the Bone and Joint Clinic evaluated his communication needs and preferences. Additionally, Defendant is not calling the author of this out-of-court statement, further undermining its relevance. The Jury will not hear what—if any—training the Bone and Joint Clinic staff have on using a "dry erase board" to communicate with Deaf individuals. Instead, the Jury will be left to speculate about this "evidence." Thus, this record is unduly prejudicial and should be excluded. | |
|---|---|---|---|---|---|
| 4.  D24 | 7966 | 801(d)(2) (Party Admissions); 803(4) ("he states he has a headache…"); 803(6) (see certification page); "All information obtain through written board to patient" is non-hearsay. | Relevant to Plaintiff's claim regarding preferred mode of communication. **Not offered to prove effectiveness or quality of communication with dry erase board, rather relevant that patient is using dry erase board as opposed to in-person interpreter during an inpatient stay with a healthcare provider.** See Complaint, Expert Report and | Same basis as D24, p. 7965. Again, this is offered for the truth of the matter asserted, specifically, that communication effectively occurred through a written board.

Plaintiff notes that what communication modalities that another provider used—without consulting Mr. Francois—does not mean that said modalities are in any way indicative or | Motion granted. Headache is irrelevant; Foundation by testimony is required for 701 lay opinion. Also Rule 403. |

| | | | Deposition of Dr. Judy Shepherd-Kegl, Plaintiff alleges that preferred mode of communication is in-person interpreter. | relevant to Mr. Francois' "preference." Admission of this record will create a case-within-a-case where Mr. Francois is obligated to litigate what happened on 4/11/2017 and whether said accommodation was his preference under the circumstances, all without the benefit of cross examining the medical professional who wrote down the out of court statement that information was obtained from Mr. Francois through "written board to patient." | |
|---|---|---|---|---|---|
| 5.  D24 | 7967 | 803(6)(see certification); ("History was obtained by writing questions and interviewing grandmother.") | Relevant to Plaintiff's claim that in-person interpreter is preferred mode of communication; Relevant to Plaintiff's claim that he is illiterate. Evidence of communication with Plaintiff through written questions. **Not offered to prove effectiveness or quality of communication with Plaintiff. Rather, relevant that Plaintiff noted to use written questions.** Relevant to  impeachment of testimony by Plaintiff, Leona Deemer, Paula Rodriguez, Dr. Judy Shepherd Kegl that Plaintiff is illiterate. | Objection. Same objections as D24, p. 7965 and 7966. | Motion granted. Foundation lacking for 701 lay opinion. Also Rule 403. |
| 6.  D-25 | 7968 | 803(6) (certification page). | Certification by Medical Records Custodian, certified | No objection. | No objection. Will be allowed if other parts of chart are admitted. Otherwise irrelevant. |

| | | | | | |
|---|---|---|---|---|---|
| | | | copies in course of ordinary business. | | |
| 7.  D25 | 7969 | 801(d)(2)(Party Admission); 803(4) ("Patient going to wound care 3 times a week and was started on Augmentin but reports he is not taking them because pills are large and he has 3 bottles…"); 803(6) (see certification). | Relevant to Plaintiff's claims of worsening/chronic pressure wounds as caused by care/communication at BRG; discusses status of patient's wounds 11/22/2017 (approximately 2 months following discharge from BRG Wound Care) as well as patient compliance; relevant to impeach any testimony by Plaintiff or Plaintiff witnesses that Plaintiff is compliant with all patient instructions. | (1) Plaintiff does not dispute the trustworthiness of this specific record.  (2)  There is no expert opinion issue.  (3) This out-of-context medical record is not relevant and, to the extent it is relevant its relevance is outweighed by the danger of unfair prejudice due to the lack of cross examination. The record states that Mr. Francois was not taking pills. Dr. Garner is not being called by Defendant to explain the nature or purpose of these pills. With no explanation from a witness, the Jury will be left to speculate. Out of context, this record is unfairly prejudicial. | Motion granted. To the extent that the statements are attributed to Plaintiff (as opposed to mother or grandmother – not clear), foundation lacking for 701 opinion. Also Rule 403. |
| 8.  D25 | 7970 | 801(d)(2) (Party and Relational admissions); 803(4) ("Patient here with interpreter and mother and case worker, patient and mother are poor historians and did not bring meds with them today. Patient reports mood has improved and he is now going to wound care, but does show up late…Discussed with patient if medication noncompliance continues, we will be unable to continue to provide medical care for the patient."); | Relevant to claims of worsening/chronic pressure wounds as being caused by care/communication at BRG; evidence of status of patient's wounds 10/18/2017 (approximately one month following discharge from BRG Wound Care) as well as patient compliance; relevant to Plaintiff's claims that only effective communication at health care provider appointment is through in-person interpreter. In-person interpreter used for | (1) Plaintiff does not dispute the trustworthiness of this specific record.  (2) Impermissible Expert Testimony. The statement that Mr. Francois is a "poor historian" is a complex, nuanced issue that is well beyond the normal, everyday opinion testimony that a lay witness is permitted to offer in Court. Given that "Gregory Gardner, MD" was not listed as a witness—and will not be testifying in | Motion granted. Foundation lacking for lay opinion testimony. Also Rule 403. |

| | | | 803(6) (see certification). | this visit and patient reported as a poor historian. Relevant to impeachment of testimony by Plaintiff, Paula Rodriguez, Dr. Judy Shepherd Kegl and/or Leona Deemer that Plaintiff communicates effectively only through in-person interpreter at medical appointments. | person—Defendant should not be permitted to utilize "back door" expert testimony about Mr. Francois being a poor historian. Nor will the Jury be told what a "good historian"<br><br>(3) Irrelevant and unduly prejudicial. Defendant seeks to offer as evidence a statement by a third-party medical provider who opined that Mr. Francois is a poor historian and somehow use this to establish whether Mr. Francois needed adequate accommodations or suffered damages from the lack of adequate accommodation. Given that Defendant will not be calling the individual who authored this "opinion," however, the relevance of this third-party state would appear to be outweighed by the danger of unfair prejudice. | |
| 9. | D25 | 7971 | 803(6) (see certification)("Patient has been discharged from wound clinic because he refused treatment."). | Relevant to claims of worsening/chronic pressure wounds as being caused by care/communication at BRG; evidence of Plaintiff non-compliance; relevant to Plaintiff's claims and impeachment of Plaintiff, Leona Deemer, Paula Rodriguez, Dr. Judy Shepherd Kegl testimony that Plaintiff did not understand why | (1) Plaintiff does not dispute the trustworthiness of this specific record.<br><br>(2)  There is no expert opinion issue.<br><br>(3) This out-of-context medical record is not relevant and, to the extent it is relevant its relevance is outweighed by the danger of unfair prejudice due to the lack of cross | Motion granted. Foundation lacking for 701 lay opinion. Also, Rule 403. |

| | | | | |
|---|---|---|---|---|
| | | | discharged from BRG Wound Care; impeachment of testimony by Plaintiff, Leona Deemer and/or Paula Rodriguez re: Plaintiff did not understand why discharged from BRG Wound Care. | examination. The record states that Mr. Francois was "discharged from wound clinic because he refused treatment." Does that mean that he was discharged from the care of Mr. Gregory Garner, MD or from the care of Baton Rouge General? With no explanation from a witness, the Jury will be left to speculate. Out of context, this record is unfairly prejudicial. | |
| 10.  D25 | 7973 | 801(d)(2) and 803(4) ("Source of patient information was patient, source of patient information was maternal grandmother, source of patient information was another in-person interpreter, patient seen by Hope Therapy…Capital Regions Home Health came to home on Friday…");  803(6) (see certification). | Relevant to Plaintiff's claim of worsening/chronic pressure wounds as being caused by care at BRG; evidence of other care provided by other caregivers during time Plaintiff was still a patient of BRG Wound Care; evidence of status of pressure wounds at the time. | (1) Plaintiff does not dispute the trustworthiness of this specific record.

(2)  There is no expert opinion issue.

(3) This out-of-context medical record is not relevant and, to the extent it is relevant, its relevance is outweighed by the danger of unfair prejudice due to the lack of opportunity for cross examination. It is entirely unclear what occurred at this medical appointment. With no explanation from a witness, the Jury will be left to speculate. Devoid of context, this record is unfairly prejudicial. | Motion granted. To the extent that source of information purports to be Plaintiff (unclear), foundation is lacking for lay opinion testimony. Also Rule 403. |
| 11.  D25 | 7975 | 801(d)(2) ("Source of patient information was patient, source of patient information was maternal grandmother, source of patient information was another person…sign | Relevant to Plaintiff's claims of worsening/chronic pressure wounds as being caused by care/communication at BRG; evidence of Plaintiff's non- | (1) Plaintiff does not dispute the trustworthiness of this specific record.

(2) Impermissible Expert Testimony. The statement that Mr. Francois is a | Motion granted. To the extent that source of information purports to be Plaintiff (unclear), foundation is lacking for lay opinion testimony. Also Rule 403. It is unnecessary at this time to rule on the objection regarding whether comparative fault is appropriate in this case. |

| | | | | |
|---|---|---|---|---|
| | | language interpreter"); 803(4) ("Both patient and MGM poor historians…Baton Rouge General Wound Care once weekly and uncertain…followed by Baton Rouge General Wound Care per MGM. Patient reports follow-up next week with wound care. Wound care treating sacral ulcer and GSW site T-Spine. Meds reviewed. Patient reports not taking as prescribed. MGM reports awaiting PT/OT. No home health to home although told on discharge home health would be ordered"); 803(6)(see certification). | compliance with treatment; Relevant to Plaintiff's claim that in-person interpreter is only means of effective communication in medical setting, evidence that patient noted as poor historian despite having in-person interpreter present; relevant to impeachment of Plaintiff, Leona Deemer, Paula Rodriguez, Dr. Judy Shepherd-Kegl testimony that Plaintiff communicates effectively only through in-person interpreter at medical appointments. | "poor historian" is a complex, nuanced issue that is well beyond the normal, everyday opinion testimony that a lay witness is permitted to offer in Court. Given that "Gregory Gardner, MD" was not listed as a witness—and will not be testifying in person—Defendant should not be permitted to utilize "back door" expert testimony about Mr. Francois being a poor historian. Nor will the Jury be told what a "good historian"<br><br>(3) This out-of-context medical record is not relevant and, to the extent it is relevant, its relevance is outweighed by the danger of unfair prejudice due to the lack of opportunity for cross examination. The one-page Defendant references, Francois_GHS7975, does not contain any indication of its author. The page is completely unsigned. Defendant fails to explain why this unsigned, one-page record—with no supporting author—is "trustworthy," much less probative of the issues in this case.<br>    Further, to the extent Defendant asserts that this record is relevant to prove its defenses of "comparative fault / contributory | |

| | | | | negligence," Mr. Francois refers the Court to the fact that these are not valid affirmative defense to a claim for an intentional tort. *Logan v. City of Pullman Police Dep't*, No. CV-04-214-FVS, 2006 WL 994759, at *2 (E.D. Wash. Apr. 14, 2006) ("because comparative fault is inapplicable in the context of an intentional tort, *Morgan*, 137 Wash.2d at 896, 976 P.2d at 623, the Court concludes Defendants' affirmative defense of comparative fault is inapplicable to Plaintiffs' Section 1983 claims."); *See* Restatement (Second) of Torts § 481 ("**The plaintiff's contributory negligence does not bar recovery against a defendant for a harm caused by conduct of the defendant which is wrongful because it is intended to cause harm to some legally protected interest of the plaintiff or a third person**") (emphasis added). | |
|---|---|---|---|---|---|
| 12.  D26 | 7976 | 803(6) (certification page). | Certification by Medical Records Custodian, certified copies in course of ordinary business. | No objection. | No objection. Allowed in if there are other parts of the record that come in; otherwise, irrelevant. |
| 13.  D26 | 7977 | 801(d)(2) (Party and Relational Admissions) ("patient and grandmother"); | Relevant to Plaintiff's claim that preferred communication is in- | Same basis as D24, p. 7965. Again, this is offered for the truth of the matter | Motion granted. To the extent source of information was Plaintiff (unclear), foundation is lacking for lay opinion.  Also, |

| | | | | | |
|---|---|---|---|---|---|
| | | 803(4) ("History obtained by writing questions and interviewing grandmother…source of history patient, grandmother"); 803(6) (see certification page). | person interpreter. Evidence that Plaintiff provides history through his grandmother and through written questions. **Not offered as a commentary on effectiveness of reported communication, rather, offered as relevant to Plaintiff's claimed "preference for in-person interpreter;"** relevant to impeachment of Plaintiff, Leona Deemer, Paula Rodriguez, Dr. Judy Shepherd Kegl testimony that Plaintiff did not understand why discharged from BRG Wound Care; impeachment of testimony by Plaintiff, Leona Deemer and/or Paula Rodriguez that Plaintiff prefers communication only through in-person interpreter. | asserted, specifically, that Mr. Francois' history was obtained through his writing and his grandmother. | Rule 403. In addition, offered excerpt is hearsay and no applicable exception. |
| 14.  D26 | 7978 | 801(d)(2) (Party Admission) ("patient and grandmother"); 803(4) ("All information obtained through written board to patient"); 803(6) (see certification page). | Relevant to Plaintiff's claim that preferred communication is in-person interpreter. Evidence that Plaintiff provides history through his grandmother and through written questions. **Not offered as a commentary on effectiveness of reported communication, rather, offered as relevant to Plaintiff's claimed** | Same basis as D24, p. 7965. Again, this is offered for the truth of the matter asserted, specifically, that information was obtained through a "written board." | Motion granted. Foundation is lacking for lay opinion.  Also, Rule 403. |

| | | | **"preference for in-person interpreter;"** relevant to impeachment of Plaintiff, Leona Deemer, Paula Rodriguez, Dr. Judy Shepherd Kegl testimony that Plaintiff prefers communication through in-person interpreter only. | | |
|---|---|---|---|---|---|
| 15.  D-26 | 7979 | 801(d)(2) (Relational and Party Admissions)("patient and family member"); 803(4) (Patient in bed communicating with dry erase board and sign language through family member); 803(6) (see certification page). | Relevant to Plaintiff's claim that preferred communication is in-person interpreter. Evidence that Plaintiff provides history through his grandmother and through written questions. **Not offered as a commentary on effectiveness of reported communication, rather, offered as relevant to Plaintiff's claimed "preference for in-person interpreter;"** relevant to impeachment of Plaintiff, Leona Deemer, Paula Rodriguez, Dr. Judy Shepherd Kegl testimony that Plaintiff prefers communication only through in-person interpreter. | Same basis as D24, p. 7965. Again, this is offered for the truth of the matter asserted, specifically, that communication occurred through a dry erase board. | Motion granted. To the extent source of information was Plaintiff (unclear), foundation is lacking for lay opinion.  Also, Rule 403. |
| 16.  D26 | 7981 | 803(6) (See certification page)("Using white board for communication secondary to hearing impaired and mute."). | Relevant to Plaintiff's claim that preferred communication is in-person interpreter. Evidence Plaintiff using white board for communication. **Not offered as a commentary on effectiveness of** | Same basis as D24, p. 7965. Again, this is offered for the truth of the matter asserted, specifically, that a "white board" was used for communication. | Motion granted. Foundation lacking for lay opinion.  Also, Rule 403. |

| | | | **reported communication, rather Plaintiff's claimed "preference for in-person interpreter;"** relevant to impeachment of Plaintiff, Leona Deemer, Paula Rodriguez, Dr. Judy Shepherd Kegl testimony that Plaintiff prefers communication only through in-person interpreter. | | |
|---|---|---|---|---|---|
| 17. D27 | 7988 | 803(6) (certification page). | Certification by Medical Records Custodian, certified copies in course of ordinary business. | No objection. | No objection. Allowed if any of other records in this grouping come in. Otherwise, irrelevant. |
| 18. D27 | 7989 | 801(d)(2) (Relational and Party Admissions)("per grandmother patient reports… patient reports…"); 803(4) (Patient deaf but can communicate via writing back and forth. Patient reports he was punched in the nose by his uncle); 803(6) (see certification page)("Patient deaf but can communicate via writing back and forth"). | Relevant to Plaintiff's claim that in-person interpreter is preferred method of communication in hospital setting, and Plaintiff's claim that he is illiterate. Evidence that Plaintiff communicates via writing back and forth. Relevant to impeachment of Plaintiff, Paula Rodriguez, Leona Deemer and Dr. Judy Shepherd-Kegl that Plaintiff is illiterate and prefers communication only through in-person interpreter. | Same basis as D24, p. 7965. Again, this is offered for the truth of the matter asserted, specifically, that Mr. Francois' history was obtained through his writing and his grandmother.<br><br>The medical records relate to Plaintiff reporting that he was punched in the nose by his uncle. **Whether Mr. Francois was punched by his uncle two years before the discrimination at issue in this case does not bear on liability or damages.** | Motion granted. Hearsay. 803(4) does not apply because statement is not by patient. 803(6) does not apply because statement is by outsider. In addition, foundation lacking for lay opinion. Also Rule 403. As to the reference to patient being punched by Uncle, this is irrelevant. |
| 19. D28 | 7993 | 803(6) (certification page). | Certification by Medical Records Custodian, certified copies in course of ordinary business. | No objection. | No objection. Allowed if any of other records in this grouping come in. Otherwise, irrelevant. |
| 20. D28 | 7995 | 803(6) (see certification)( "He was extremely withdrawn and was | Relevant to Plaintiff's claim for worsening/chronic pressure ulcers as | Same basis as D24, p. 7965. Again, this is offered for the truth of the matter | Motion granted. To the extent source of information was Plaintiff (unclear), foundation |

| | | | | | |
|---|---|---|---|---|---|
| | | not participatory with rehab…He did have his grandmother come as well as friends, and interpretative service working with him each day during rehab.  Occasionally there were times when there was not an interpreter service present. Nonetheless, the majority of the time the patient did have an interpreter present to help with education and communication daily."). | being caused by care at BRG; establishes patient's compliance as alternative cause, as patient received patient education in presence of in-person interpreter; relevant to Plaintiff's claim that in-person interpreter is only effective communication in healthcare setting, as patient had in-person interpreter, did not respond optimally.  Relevant to impeachment of testimony by Plaintiff, Leona Deemer, Paula Rodriguez, Dr. Judy Shepherd-Kegl that only effective communication in medical setting for Plaintiff is in-person interpreter. | asserted, specifically, that Mr. Francois was "withdrawn and was not participatory with rehab." Again, however, Mr. Francois will not be able to cross examine the writer of this statement as to how often an interpreter was actually present and what steps they took (if any) to engage Mr. Francois in the rehabilitation process.  See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | lacking for lay opinion.  Also, Rule 403. |
| 21.  D28 | 8004 | 803(6) (see certification); 901(d)(2)("spoke with grandmother, interpreter…Grandmother states she has kicked out the mother and uncle… Coordinator is Paula Rodriguez… Grandmother is retired and can assist at home…Grandmother states patient will only have a tub, no shower…Grandmother states she will have no assistance….Grandmother unsure of PCP and states he can use whatever pharmacy we send the prescriptions to…"); 803(4) (Patient & family providing | Relevant to Plaintiff's claim for worsening/chronic pressure ulcers as being caused by care at BRG; Evidence of Plaintiff's continuity of care at home and who his caregivers were, care occurring before, during, after of pressure wounds by caregivers other than BRG; relevant to Plaintiff witness Paula Rodriguez (employed by Plaintiff as case worker) bias and/or conflict of interest vis a vis Rodriguez and business owned by Rodriguez, Deaf Focus. | Plaintiff waives any objections to this page. | Plaintiff waives objection. Excerpt will be admitted without objection. |

| | | information regarding continuity of care at home). | | | |
|---|---|---|---|---|---|
| 22.  D28 | 8006 | 801(d)(2) (Party admission: "patient reports"); 803(6) (see certification); 803(4) (OT educated patient on importance of trying to stay out of bed and upright in chair or recliner as much as possible outside therapy hours. He verbalized understanding and was agreeable to staying up in chair after OT session this pm until after dinner… patient reports through interpreter he is eating some… declined supplements"); Non-hearsay: not offered for truth, offered to show patient provided with wound prevention instructions. | Relevant to Plaintiff's claim of worsening/chronic pressure ulcers as being caused by care of BRG; instructions re: wound prevention provided to patient via in-person interpreter; relevant to impeachment of testimony by Plaintiff, Paula Rodriguez, Leona Deemer, Dr. Shepherd-Kegl that patient is compliant with instructions provided through in-person interpreter or that instructions provided through in-person interpreter would prevent worsening/chronic pressure wounds and that instructions provided at BRG through VRI were inadequate and caused worsening/chronic pressure wounds, as patient already instructed regarding same at prior facility *via in person interpreter*. | (1) Fails as Business Record. First, trustworthiness is at issue. There is no evidence that an interpreter was present. Second, no evidence that dealing with Deaf individuals is a regular part of the Bone and Joint Clinic's business or occupation and that they had the policies, procedures, and practices in place to accurately communicate with Mr. Francois.    Further, 801(d)(2) and 803(4) are not applicable because this is a narrative note by a nurse as to what purportedly occurred (*e.g.* the nurse generally summarizes that he "verbalized understanding"), not a specific statement by Mr. Francois  (2) Impermissible Expert Testimony. Testimony by an "OT" (occupational therapist) that Mr. Francois was "educated" and "verbalized understanding" is not everyday opinion testimony that a lay witness is permitted to offer in Court. Given that the author of this statement will not be called by Defendant as a witness—and will not be testifying in | Motion granted. Foundation lacking for lay opinion.  Also, Rule 403. |

| | | | | person—Defendant should not be permitted to utilize "back door" expert testimony about Mr. Francois having been educated. This testimony naturally begs the question—when is someone "not educated?"<br><br>(3) This out-of-context medical record is not relevant and, to the extent it is relevant, its relevance is outweighed by the danger of unfair prejudice due to the lack of opportunity for cross examination. It is entirely unclear what is meant by the phrase "verbalized understanding." Does this mean that Mr. Francois spoke eloquently about his condition? Nodded his head? Sat their silently and did not object? Given that Defendant is not calling a witness from this medical appointment, it would appear that the testimony is of nominal or insignificant relevance. Out-of-context, this medical record creates a danger of unfair prejudice.<br>    See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | |
| 23.  D28 | 8007 | 803(6)(see certification); ("I also instructed the patient | Relevant to Plaintiff's claim of worsening/chronic | Same basis as D24, p. 7965. Again, this is nothing more than a | Motion granted. Foundation lacking for lay opinion. Also, Rule 403. |

| | | | | | |
|---|---|---|---|---|---|
| | | that he needs to not refuse instruction and demonstration with nursing and therapy."); Non-hearsay: not offered for truth, offered to show patient provided with wound prevention instructions. | pressure ulcers as being caused by care of BRG; instructions re: wound prevention provided to patient via in-person interpreter; relevant to impeachment of testimony by Plaintiff, Paula Rodriguez, Leona Deemer, Dr. Shepherd-Kegl, that patient is compliant with instructions provided through in-person interpreter or that instructions provided through in-person interpreter would prevent worsening/chronic pressure wounds and that instructions provided at BRG through VRI were inadequate and caused worsening/chronic pressure wounds, as patient already instructed regarding same at prior facility *via in person interpreter*. | lengthy, out-of-court narrative by a third-party individual who will not be testifying in Court. It is impermissible hearsay.  See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | |
| 24.  D28 | 8011 | 801(d)(2) (Party Admission: "patient nodded head…"); 803(6)(see certification); 803(4) ("patient nodded head that he understood importance of following a bowel program, as well as risk of developing pressure sores with poor positioning in bed and lack of movement. Encouraged patient to have more awareness of his body's needs with skin checks, proper diet and | Relevant to Plaintiff's claim of worsening/chronic pressure ulcers as being caused by care of BRG; instructions re: wound prevention provided to patient via in-person interpreter; relevant to impeachment of testimony by Plaintiff, Paula Rodriguez, Leona Deemer, Dr. Shepherd-Kegl, that patient is compliant with instructions provided through in-person interpreter or that instructions | Objection. Same objections as D24, p. 7965.  As for Mr. Francois "nodding his head," Dr. Judge Shepard-Kegl will discuss how the "Deaf nod" does not indicate agreement or understanding, but is merely reflective of a Deaf individual attempting to follow along and/or be compliant. Permitting the speculative statement by an out-of-court declarant that Mr. Francois | Motion granted. Foundation lacking for lay opinion regarding nodded head and understood. Also, Rule 403. |

| | | | movement. Patient and patient's grandmother nodded head in understanding of selfcare needs upon discharge."); Non-hearsay: not offered for truth, offered to show patient provided with wound prevention instructions. | provided through in-person interpreter would prevent worsening/chronic pressure wounds and that instructions provided at BRG through VRI were inadequate and caused worsening/chronic pressure wounds, as patient already instructed regarding same at prior facility *via in person interpreter*. | nodding his head indicated understanding will result in a trial-withing-a-trial as to what occurred on 5/11/2017.<br><br>    See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | |
|---|---|---|---|---|---|---|
| 25. | D28 | 8013 | 801(d)(2) (Party admission: "patient verbalized…"); 803(6) (see certification); 803(4) (…bed positioning reviewed as well as skin checks to check for skin break and to prevent pressure areas. Home self-care handout given and explained to patient with an interpreter present..."); Non-hearsay: not offered for truth, offered to show patient provided with wound prevention instructions. | Relevant to Plaintiff's claim of worsening/chronic pressure ulcers as being caused by care of BRG; instructions re: wound prevention provided to patient via in-person interpreter; relevant to impeachment of testimony by Plaintiff, Paula Rodriguez, Leona Deemer, that patient is compliant with instructions provided through in-person interpreter or that instructions provided through in-person interpreter would prevent worsening/chronic pressure wounds and that instructions provided at BRG through VRI were inadequate and caused worsening/chronic pressure wounds, as patient already instructed regarding same at prior facility *via in person interpreter*. | Objection. Same objections as D24, p. 7965.<br><br>Defendant admits that it is seeking to offer this statement "to show patient provided with wound prevention instructions." Whether Mr. Francois was or was not previously given wound care instructions is the truth of the matter asserted. This is impermissible hearsay and thus is not admissible.<br><br>Further, the vague narrative statement that "patient verbalized" is neither a party admission under 801(d)(2) or a specific statement made for the purpose of diagnosis under 803(4). | Motion granted. Foundation lacking for lay opinion. Also 403. |
| 26. | D28 | 8017 | 803(6) (see certification); | Relevant to Plaintiff's claim of | Objection. Same objections as D24, p. | Motion granted. 701 Foundation testimony lacking. Also 403. |

| | | | | | |
|---|---|---|---|---|---|
| | | ("Patient educated on pressure relief and demonstrated wheelchair pushup and lateral lean for pressure relief. Educated on frequency and direction."); Non-hearsay: not offered for truth, offered to show patient provided with wound prevention instructions. | worsening/chronic pressure ulcers as being caused by care of BRG; instructions re: wound prevention provided to patient via in-person interpreter; relevant to impeachment of testimony by Plaintiff, Paula Rodriguez, Leona Deemer, Dr. Shepherd-Kegl that patient is compliant with instructions provided through in-person interpreter or that instructions provided through in-person interpreter would prevent worsening/chronic pressure wounds and that instructions provided at BRG through VRI were inadequate and caused worsening/chronic pressure wounds, as patient already instructed regarding same at prior facility *via in person interpreter*. | 7965 and 7967 and D25, p. 7970.<br><br>Defendant admits that it is seeking to offer this statement "offered to show patient provided with wound prevention instructions" Whether Mr. Francois was or was not previously given wound care prevention instructions is the truth of the matter asserted. This is impermissible hearsay and thus is not admissible.<br>    See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | |
| 27.  D28 | 8026 | 801(d)(2) (Relational/Party Admission: "Spoke with Paula with Deaf Focus, patient's grandmother…"); 803(6) (see certification); 803(4) (Paula suggested I call two facilities…grandmother states that she feels she has two options, return to back to her house that needs work done to prepare for a wheelchair and have her other children move out, or find another rental | Relevant to Plaintiff's claim for worsening/chronic pressure ulcers as being caused by care of BRG; evidence of patient care at home during same time frame; relevant to bias on part of Plaintiff witness Paula Rodriguez as paid case worker on behalf of Plaintiff. | Plaintiff waives objections as to this page, but maintains an objection to admission of this record without the redaction of the statement "I have contacted Public Housing and Section 8 and they have closed the application process." Due to the highly prejudicial nature of public assistance programs, these statements should be excluded. | Plaintiff "waives his objection as to this page" except as to references to Public Housing. It is unclear whether Defendant is even offering that part of the record but, to the extent it is, it is excluded as irrelevant and, to the extent relevant, unduly prejudicial. The remainder of the entry will be admitted without objection. |

| | | | property that is handicap accessible…Also spoke to Paula to stated that she would send out a request for info on rental properties. Grandmother states she has income…Plan at this time is to discharge home…with support from grandmother.") | | | |
|---|---|---|---|---|---|---|
| 28. | D28 | 8030 | 801(d)(2) (Relational Admission: "Paula with Deaf Focus, patient's grandmother… "Paula states…"); 803(6) (see certification); 803(4) ("Paula states she has worked with Theophilus PCA Services before and can assist with training the PCA if needed. Paula also states that counseling services can be provided and she can get patients set up with case management services to assist with community resources and help patient connect with the community….Paula also states she could be the liaison between grandmother and BRRH so BRRH could contact her once the patient's name comes up…and she could assist grandmother in transitioning patient from outpatient therapy to day neuro." | Relevant to Plaintiff's claim for worsening/chronic pressure ulcers as being caused by care of BRG; evidence of patient care at home during same time frame; relevant to bias on part of Plaintiff witness Paula Rodriguez as paid case worker on behalf of Plaintiff. | Objection. (1) Hearsay. The vast majority of this record is a narrative that is offered for the truth of the matter asserted by the author, namely, what the out-of-court declarant Brandi B. Westerfield did or who she spoke (2) No unretained expert opinion issue. (3) Irrelevant and unduly prejudicial. This entry is irrelevant and unduly prejudicial because whether Ms. Rodriguez offered to—but did not— actually provide training to a personal care attendant is not a relevant fact in this case. See also, Plaintiff's argument about the inapplicability of comparative fault/contributory negligence. | Motion granted. Irrelevant and to the extent relevant, it is excluded on Rule 403 grounds. |
| 29. | D28 | 8031 | 801(d)(2) (Relational and Party Admission: "patient's | Relevant to Plaintiff's claim for worsening wound, | Objection. (1) Hearsay. The vast majority of this | Motion granted. Hearsay and not subject to 803(4) (statements not by patient) or 803(6) (statements |

| | | grandmother…Paula states…Grandmother states…Patient states") 803(6) (see certification); 803(4) ("Grandmother states patient's aunt Gettys can only help him four days a month, so now the Plaintiff has changed to patient's cousin's house… Patient states he does not want to go to Darlene's house, he wants to go to Gettys' house. Grandmother explained through interpreter that he can't go to Gettys' house because she can only keep him four days a month… Grandmother to contact Tasha to arrange for a home visit prior to patient's discharge.") | plaintiff's claims for worsening/chronic pressure ulcers as being caused by care of BRG; evidence regarding continuity of care, caregivers at home, and care that occurred during time patient was admitted to BRG Wound Care. | record is a narrative that is offered for the truth of the matter asserted by the author, namely, what the out-of-court declarant Brandi B. Westerfield did or who she spoke    As to purported party admissions by Ms. Deemer and Mr. Francois, Plaintiff concedes that these statements is sufficient specific that Defendant should be permitted to use the page to impeach Ms. Deemer and Mr. Francois, if appropriate and somehow relevant.  (2) No unretained expert issues.  (3) Irrelevant and unduly prejudicial. This entry is irrelevant and unduly prejudicial because a disagreement as to Mr. Francois' housing arrangements *prior* to Mr. Francois starting his medical treatment at Baton Rouge General has no bearing on whether Defendant provided effective communication or whether Defendant cause Mr. Francois damages.    See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | of outsider) exceptions. Further, irrelevant for the purpose proffered. |
| 30. D28 | 8032 | 801(d)(2) (Relational, Party Admission: "Also spoke with | Relevant to Plaintiff's claim for worsening wound, plaintiff's claims for | Objection. Same primary basis as D28, page 8031. | Motion granted. Hearsay and not subject to 803(4) (statement not by patient) or 803(6) (statement |

| | | | patient, Paula with Deaf Focus…"); 803(6) (see certification); 803(4) ("Spoke with Tasha with TCP about workers that will provide services to patient…if approved the services will start 5/19…Paula has started a GoFundMe to help with miscellaneous needs…") | worsening pressure wounds as being caused by care at BRG; evidence of continuity of care and caregivers at home; relevant to bias on part of plaintiff witness Paula Rodriguez as paid case worker on behalf of Plaintiff. | **Whether a GoFundMe campaign was started for Mr. Francois has no bearing on whether Defendant provided effective communication or whether Defendant caused Mr. Francois damages.** | by "outsider") exceptions. Also 403. |
|---|---|---|---|---|---|---|
| 31. | D28 | 8034 | 803(6) (see certification)( "Action to provide durable medical equipment. Hope Rehab to provide outpatient therapy. TCP to provide in-home care four hours a day, seven days a week."). | Relevant to Plaintiff's claims of worsening/chronic pressure wounds as caused by care at BRG; evidence of Plaintiff's continuity of care at home and prior to becoming a patient at BRG, care given during time of treatment at BRG; relevant as impeachment of Paula Rodriguez's testimony that Plaintiff received no care or support services at home following discharge from Our Lady of the Lake Regional Medical Center. | Objection. (1) Hearsay. This is a lengthy, out-of-court narrative by a third-party individual who will not be testifying in Court. The record is not trustworthy as there is no indication that an interpreter was present to interpret for Mr. Francois.<br><br>801(d)(2) and 803(4) are not applicable because this is a narrative statement by a medical professional as to what purportedly occurred, not a specific statement by Mr. Francois. Thus, it is neither a party admission or "a statement" made for medical diagnosis or treatment. It is impermissible hearsay-within-hearsay.<br><br>(2) No unretained expert issues.<br><br>(3) Irrelevant and unduly prejudicial. This entry is irrelevant and unduly prejudicial because it | Motion granted. While 803(6) is an exception to first layer of hearsay, there is no exception to second layer of hearsay. Also 403. |

| | | | | creates a "case within a case" where Mr. Francois is obligated to rebut what did/did not happen on 5/16/2017 at Our Lady of the Lake, whether the out-of-court native is accurate, and whether Our Lady of the Lake evaluated his communication needs and preferences. Plaintiff will not be able to cross examine the out-of-court individual who made this out-of-court narrative statement. Finally, the Jury will not hear what—if any—training the OLOL staff have on communicating with Deaf individuals, so the reliability of this record is doubtful. | |
|---|---|---|---|---|---|
| 32. D28 | 8036 | 803(6) (see certification)( "Discussed importance of skin checks for pressure sores, increasing movement throughout the day and staying active upon discharge."); Not offered for truth, rather, evidence that patient was provided instruction regarding prevention of pressure ulcers. | Relevant to Plaintiff's claim of worsening/chronic pressure wounds being caused by care at BRG, evidence of instructions provided to patient prior to becoming patient of BRG; relevant to impeachment of testimony by Plaintiff, Paula Rodriguez, Leona Deemer, Dr. Shepherd-Kegl that patient is compliant with instructions provided through in-person interpreter or that instructions provided through in-person interpreter would prevent worsening/chronic pressure wounds and that instructions provided at BRG | Objection. Same primary basis as D28, page 8034. | Motion granted. Lay witness testimony needed for 701 foundation which is lacking. Also 403. |

| | | | through VRI were inadequate and caused worsening/chronic pressure wounds, as patient already instructed regarding same at prior facility *via in person interpreter*. | | |
|---|---|---|---|---|---|
| 33. D28 | 8043 | 801(d)(2) (Relational and Party Admissions: "both patient and grandmother in agreement"); 803(6) (see certification); 803(4) ("Grandmother to contact Tasha to arrange for home visit prior to patient's discharge. Social worker reviewed the BRRH day neuro program and outpatient therapy at Hope PT. Both patient and grandmother in agreement. Social worker to have MD complete needed paperwork for TCP. Faxed order of the Hope PT with referral.") | Relevant to Plaintiff's claim for worsening/chronic pressure wounds as being caused by care at BRG; evidence regarding patient care at home and prior to becoming a patient at BRG; relevant to impeach Paula Rodriguez's testimony that Plaintiff received no home care services following discharge from Our Lady of the Lake Regional Medical Center. | Objection. Same primary basis as D28, page 8034. | Motion granted. Lay witness testimony needed for 701 foundation and is lacking. Also 403. |
| 34. D29 | 8062 | 803(6) (certification page). | Certification by Medical Records Custodian, certified copies in course of ordinary business. | No objection. | No objection. Will be allowed if other parts of this grouping are allowed into evidence. Otherwise, irrelevant. |
| 35. D29 | 8066 | 803(6)(see certification page) ("room very dirty with human waste, dirty bandages, trash and dirty clothes"). | Relevant to Plaintiff's claims of worsening/chronic pressure wounds as being caused by care at BRG; evidence of Plaintiff's care and condition at home during time of treatment and before and after treatment at BRG; relevant to impeachment of | Plaintiff waives any objections to this page. | P Waives any objection to this page. Based on this waiver, Motion is denied. |

| | | | testimony of Plaintiff, Leona Demmer, Paula Rodriguez regarding compliance and quality of Plaintiff's care at home, being compliant with healthcare provider instructions as provided through Plaintiff's choice in-person interpreter; relevant to impeachment of Plaintiff, Dr. Judy Shepherd-Kegl, Leona Deemer and Paula Rodriguez that Plaintiff understands instructions for home care through in-person interpreter, as well as testimony by Paula Rodriguez that Plaintiff received no home care or services following discharge from OLOL. | | |
|---|---|---|---|---|---|
| 36. D30 | 8067 | 803(6) (certification page). | Certification by Medical Records Custodian, certified copies in course of ordinary business. | No objection. | No objection. Will be allowed if others in this grouping are allowed. Otherwise, irrelevant. |
| 37. D30 | 8068 | 803(6) (certification page). | Certification by Medical Records Custodian, certified copies in course of ordinary business. | No such page included in Exhibit 4 filed with the Court. Plaintiff unable to object or not object. | This page was provided by Defendant in a supplemental offering. (Doc. 199-1. It will be allowed if others in this grouping are allowed. Otherwise, irrelevant. |
| 38. D30 | 8070 | 801(d)(2) (Relational and Party Admissions)("history provided by patient; history provided by grandmother"); 803(4) ("chief complaint is 'don't know' …presents with interpreter and grandmother…he is not particularly engaged in the interview with apathetic responses to fairly queer questions | Relevant to Plaintiff's claim that only effective communication in healthcare setting is through in-person interpreter; evidence that Plaintiff presents with in-person interpreter and is still noted to be a poor historian; relevant to impeachment of testimony by Dr. Shepherd Kegl, Plaintiff, Paula | (1) Plaintiff waives hearsay concerns. (2) Impermissible expert opinion testimony. Defendant has not disclosed Dr. Andrew D. Calhoun as an expert. Nonetheless, Defendant seeks to offer a record containing an opinion that Mr. Francois was suffering from "dysphoria" and that | Motion granted. To the extent these are expert opinions, witness not listed and Rule 26 report not provided. To the extent that it is 701 lay opinion testimony, it lacks necessary foundation testimony. In addition, 403. |

| | | | | | |
|---|---|---|---|---|---|
| | | with his frequent signing "I don't know." indicates his dysphoria is related to his injury but does not elaborate much."). | Rodriguez, Leona Deemer that Plaintiff most effective communication in health care setting is via in-person interpreter only. | he was "not particularly engaged." Yet the Jury will not receive explanation as to what constitutes dysphoria or what constitutes the proper "engagement level." <br><br> (3) Irrelevant and unduly prejudicial. This entry is irrelevant and unduly prejudicial because it creates a "case within a case" where Mr. Francois is obligated to rebut what did/did not happen on 10/19/2017 at Baton Rouge Mental Health, whether the out-of-court native is accurate, etc. without an opportunity to cross examine the author. Given that Defendant is not calling the author, the relevance of this record/medical appointment appears to be of nominal value. <br>    See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | |
| 39.  D31 | 8071 | 803(6) (certification page). | Certification by Medical Records Custodian, certified copies in course of ordinary business. | No objection. | No objection. Will be allowed if others in this grouping are allowed. Otherwise, irrelevant. |
| 40.  D31 | 8072 | 803(6) (certification page). | Certification by Medical Records Custodian, certified copies in course of ordinary business. | No objection. | No objection. Will be allowed if others in this grouping are allowed. Otherwise, irrelevant. |
| 41.  D31 | 8074 | 803(6) (see certification)( "Patient caregiver was instructed on how to clean the | Relevant to Plaintiff's claim for worsening/chronic pressure wounds as being caused by care | Objection. Same primary basis as objections D24, p. 7965 and D28, page 8034. | Motion denied. Relevant to the wound causation issue. Meets both 803(4) and 803(6) exceptions to the hearsay rule. Because the instructions were |

| | | | patient, especially around the wound… if and when she changes the dressing at home."); Non-hearsay: not offered for truth, offered as evidence Plaintiff's grandmother/caregiver provided with instructions to perform wound care at home. | at BRG; relevant as evidence of other wound care provided at same time as that of BRG and following care of BRG. | Further, the trustworthiness of this record is especially suspect. **It is a hand scratched note on a blank piece of white paper lacking letterhead, an author, or a signature.** Notes scratched on non-standard medical records do not satisfy the business records exception. *Ariza v. Loomis Armored US, LLC*, No. CV31300419JWDEWD, 2016 WL 297702, at *4 (M.D. La. Jan. 22, 2016) ("Notes scratched on a pad by a doctor or an email written at a patient's request are not the kind of official records to which Rule 803(6) applies, for they are too informal and too unique to the individual to be classified as records of a regular business activity."). This out-of-court narrative by an unknown third-party individual is inadmissible hearsay. | given only to grandmother, there is no 701 problem and a significantly lessened 403 problem. |
| 42. D31 | 8077 | 803(6) (see certification)( "Patient's wounds look good and appear to be healing. The wound's edges appear to be shrinking, particularly the sacral wounds…"). | Relevant to Plaintiff's claims for worsening/chronic pressure wounds as being caused by care of BRG; evidence of wound care from other providers occurring during the time that patient was a patient at BRG; relevant to impeach testimony of Plaintiff, Leona Deemer and/or Paula Rodriguez that Plaintiff's wounds were becoming worse | Objection. (1) Hearsay. This is a lengthy, out-of-court narrative by a third-party individual who will not be testifying in Court. It is impermissible hearsay-within-hearsay and thus is not admissible. 801(d)(2) and 803(4) are not applicable because this is a narrative summary by a medical professional | Motion denied. Relevant to the wound causation issue. It is not hearsay within hearsay and it meets both 803(4) and 803(6) exceptions to the hearsay rule. Although it is lay opinion testimony, it is more in the nature of a description and does not involve the same issues of interpretation as the excerpts involving communication to Plaintiff. |

| | | | during Plaintiff's admission to Baton Rouge General Wound Care. | as to what purportedly occurred and of what Mr. Francois purported said. Thus, it is neither a party admission or "a statement" made for medical diagnosis or treatment. It is impermissible hearsay-within-hearsay.<br><br>(2) Improper expert testimony. A lay witnesses may, in some circumstances, offer opinion testimony. FED. R. EVID. 701; *United States v. Curescu*, 674 F.3d 735, 740 (7th Cir. 2012). However, such an opinion requires proper foundation. "[A] witness offering a lay opinion must base his opinion on his own personal knowledge, which must be established to the court and jury. When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701 because there is no way for the court to assess whether it is rationally based on the witness's perceptions." *United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002). Here, an out-of-court, third party states that "Patient's wounds look good and appear | |
| | | | | | |

| | | | | to be healing." No foundation has been laid that this physical therapist possesses the necessary education or experience to provide technical testimony as to whether Mr. Francois wounds "looked good" or "were healing."<br><br>(3) Unduly prejudicial. This entry is unduly prejudicial because it creates a "case within a case" where Mr. Francois is obligated to rebut what did/did not happen on July 19, 2017 and whether the out-of-court native is accurate. Plaintiff will not be able to cross examine this out-of-court narrative statement. Finally, the Jury will not hear what—if any—training the Hope Therapy staff have on communicating with Deaf individuals, so the reliability of this narrative is doubtful. | |
|---|---|---|---|---|---|
| 43.  D31 | 8083 | 803(6) (See Certification)( Therapist suspected patient's cushion might be contributing to the opening/spreading of patient's bilateral hip area wound… Patient's wound was doing a lot better until he started sitting on the J Union wheelchair cushion loaned to him by the wheelchair company."). | Relevant to Plaintiff's claims of worsening/chronic pressure wounds as being caused by care at BRG; evidence of other causes of wound worsening; relevant to impeach testimony of Paula Rodriguez, Plaintiff, and/or Leona Deemer that patient's wounds were becoming worse because of lack of instruction at BRG and during time he was patient of BRG. | Objection. Same primary basis as objections D31, p. 8077.<br>   Further, the trustworthiness of this record is especially suspect. **It is a hand scratched note on a blank piece of white paper lacking letterhead, an author, or a signature.** This out-of-court narrative by an unknown third-party individual is inadmissible hearsay. | Motion granted in part and denied in part. Relevant to the wound causation issue. It is not hearsay within hearsay and it meets both 803(4) and 803(6) exceptions to the hearsay rule. However, while the description of the wound is lay opinion testimony, it is more in the nature of a description. The motion is granted, however, as to the opinion regarding therapist's "suspicion". Here foundation is required and there is no witness to provide the needed foundational testimony. |

| | | | | See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | |
|---|---|---|---|---|---|
| 44.  D31 | 8096, 8097 | 801(d)(2) ("Patient reported"); 803(6) (see certification); 803(4) ("Patient reported he felt very sad and depressed every time he goes to the wound clinic, because they keep scraping on his wounds, especially his bilateral hip area wound and its very painful. Patient also reported that they want him to go to the hospital for 21 days to treat his wounds in an inpatient basis…"). Non-hearsay: prior inconsistent statement by Plaintiff. | Relevant to impeachment of Plaintiff, Leona Deemer, Dr. Shepherd-Kegl and/or Paula Rodriguez's testimony that Plaintiff did not understand BRG Wound Care appointments, did not understand debridement, and testimony from same that Plaintiff did not understand that he received recommendation to consider treatment for his wounds in an inpatient care setting. | Objection. (1) Hearsay and does not qualify as a business record. This narrative is scratched, in part, on a blank piece of paper *See* Francois_GHS08097. Plaintiff further notes that Francois_GHS08096 bears a signature line, but the record is unsigned. **There is no indication of who even created this record.**<br><br>      801(d)(2) and 803(4) are not applicable because this is a narrative summary by a medical professional as to what purportedly occurred and of what Mr. Francois purported said. Thus, it is neither a party admission or "a statement" made for medical diagnosis or treatment. It is impermissible hearsay.<br><br>(2) Same expert issue as D31, p. 8077.<br><br>(3) Unduly prejudicial. This entry is unduly prejudicial because it creates a "case within a case" where Mr. Francois is obligated to rebut what did/did not happen on August 30, 2017 and whether | Motion granted. It is hearsay and there is no signature by the record keeper or other indication of who made the record. Furthermore, it carries the same 701 and 403 concerns expressed elsewhere. |

| | | | | the out-of-court native is accurate. Plaintiff will not be able to cross examine this out-of-court narrative statement. Finally, the Jury will not hear what—if any—training the Hope Therapy staff have on communicating with Deaf individuals, so the reliability of this narrative is doubtful.<br><br>See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | |
|---|---|---|---|---|---|
| 45.  D31 | 8104 | 803(6) (see certification)( "Has been sitting on a hard surface rather than his bed or his wheelchair, so patient was instructed to avoid sitting on hard surfaces especially for a prolonged period of time."); Non-hearsay: offered as evidence Plaintiff given instruction regarding prevention of pressure wounds. | Relevant to Plaintiff's claim of worsening/chronic pressure wounds as being caused by care of BRG; evidence of Plaintiff non-compliance with instructions by caregiver regarding wound prevention; relevant to impeachment of Plaintiff, Leona Deemer, Paula Rodriguez and Dr. Shepherd Kegl that most effective communication of Plaintiff is through in-person interpreter, evidence that Plaintiff is repeatedly educated through in-person interpreter and exhibits non-compliance. | Objection. Same essential objection as D31, p. 8077.<br><br>Further, this is clearly offered for the truth of the matter asserted, namely, whether Mr. Francois was instructed "to avoid sitting on hard surfaces…"<br><br>See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | Motion granted. Lacks 701 foundational testimony and is also excluded under Rule 403. |
| 46.  D31 | 8111 | 803(6) (See Certification)( "Patient is aware and often reminded that he needs to perform | Relevant to Plaintiff's claim of worsening/chronic pressure wounds as being caused by care | Objection. Same essential objection as D31, p. 8077. | Motion granted. Lacks 701 foundational testimony and is also excluded under Rule 403. |

| | | | | | |
|---|---|---|---|---|---|
| | | pressure relief frequently in sitting position between every 30 minutes to an hour."); Non-hearsay: offered as evidence Plaintiff given instruction regarding prevention of pressure wounds. | of BRG; evidence of Plaintiff non-compliance with instructions by caregiver regarding wound prevention; relevant to impeachment of Plaintiff, Leona Deemer, Paula Rodriguez and Dr. Shepherd Kegl that most effective communication of Plaintiff is through in-person interpreter, evidence that Plaintiff is repeatedly educated through in-person interpreter and exhibits non-compliance. | Further, this is clearly offered for the truth of the matter asserted, namely, whether a conversation occurred on 11/13/2017 where Mr. Francois was purportedly given instruction regarding prevention of pressure wounds.<br><br>See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | |
| 47.  D31 | 8120 – 8121 | 801(d)(2)(Party Admission) and 803(4): ("He reported that he had blood clots and was hospitalized…patient also reported that he is now a blood thinner medication. Patient also stated that he was also experiencing shortness of breath while laying down before he went to the hospital, but he is no longer experiencing shortness of breath."); 803(6)(see certification); Non-hearsay: prior inconsistent statement by Plaintiff. | Relevant to impeach testimony of Plaintiff, Paula Rodriguez, Leona Deemer, and Plaintiff expert Dr. Shepherd-Kegl that Plaintiff does not understand his medical treatment and does not understand his treatment while a patient at BRG; Plaintiff admitted to BRG immediately prior to this wound care visit. **See Joint Exhibit 17.** | Objection. Same essential objection as D31, p. 8096-97. | Motion granted. Lacks 701 foundational testimony and is also excluded under Rule 403. |
| 48.  D31 | 8148 | 803(6) (see certification)( "Patient was again reminded that he needs to avoid sitting continuously for over 2 hours in order to promote the healing | Relevant to Plaintiff's claims of worsening/chronic pressure wounds as being caused by care of BRG; evidence of Plaintiff non-compliance with | Objection. Same essential objection as D31, p. 8077.<br><br>Further, this is clearly offered for the truth of the matter asserted, namely, | Motion granted. Lacks 701 foundational testimony and is also excluded under Rule 403. |

| | | | | | |
|---|---|---|---|---|---|
| | | of his ischium wound."); Non-hearsay: not offered for truth, offered as evidence Plaintiff received instruction regarding prevention of pressure wounds. | instructions by caregiver regarding wound prevention; relevant to impeachment of Plaintiff, Leona Deemer, Paula Rodriguez and Dr. Shepherd Kegl that most effective communication of Plaintiff is through in-person interpreter, evidence that Plaintiff is repeatedly educated through in-person interpreter and exhibits non-compliance. | whether a conversation occurred on 4/11/2018 where Mr. Francois was given instruction siting in one place and its impact on wound healing.<br><br>See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | |
| 49. D31 | 8156 – 8157 | 803(6) (see certification)( "Patient developed pseudo-irritated area…ischium area wound because patient was sitting for a long period of time, possibly in his car without his cushion. Patient was strongly advised to avoid prolonged sitting without his ROHO cushion so that he would not cause further complications to his ischium area wound…Patient was instructed to spend more time on his prone in order to keep the wound from being further irritated."); Non-hearsay: not offered for truth, offered as evidence Plaintiff received instruction regarding prevention of pressure wounds. | Relevant to Plaintiff's claims of worsening/chronic pressure wounds as being caused by care of BRG; evidence of Plaintiff non-compliance with instructions by caregiver regarding wound prevention; relevant to impeachment of Plaintiff, Leona Deemer, Paula Rodriguez and Dr. Shepherd Kegl that most effective communication of Plaintiff is through in-person interpreter, evidence that Plaintiff is repeatedly educated through in-person interpreter and exhibits non-compliance. | Objection. Same essential objection as D31, p. 8096-97.<br><br>See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | Motion granted in part and denied in part. Motion denied as to statement that "Patient developed pseudo-irritated area adjoined to the ischium area wound" for reasons given in the Court's ruling on excerpt 43. The motion is granted as to the remainder of the excerpt, beginning with "because patient was sitting, etc." Lacks 701 foundational testimony and is also excluded under Rule 403. |
| 50. D31 | 8164 | 801(d)(2)(Party Admission) and 803(4): ("Patient reported that he took | Relevant to Plaintiff's claims of worsening/chronic pressure wounds as | Objection. Same essential objection as D31, p. 8077. | Motion granted. Lacks 701 foundational testimony and is excluded under Rule 403. |

| | | | | | |
|---|---|---|---|---|---|
| | | his antibiotic medication only once per day over the weekend."); 803(6) (see certification) | being caused by care of BRG; evidence of Plaintiff non-compliance with instructions by caregiver regarding wound prevention; relevant to impeachment of Plaintiff, Leona Deemer, Paula Rodriguez and Dr. Shepherd Kegl that most effective communication of Plaintiff is through in-person interpreter, evidence that Plaintiff is repeatedly educated through in-person interpreter and exhibits non-compliance. | This statement is merely an out-of-court narrative by an individual who will not be testifying at trial.<br><br>   See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | |
| 51.  D31 | 8188 | 803(6) (see certification)( "Patient showed increased bleeding from his bilateral big toes when he arrived in therapy today…Patient's bilateral big toes had ingrown toenails and open areas around the edges of the toenails. Patient's feet were atrociously dirty…"). | Relevant to Plaintiff's claim of worsening/chronic pressure wounds as being caused by care at BRG; evidence of Plaintiff's care at home with caregivers; relevant to impeachment of testimony by Plaintiff, Leona Deemer, Paula Rodriguez that Plaintiff received regular care at home for wounds per instructions provided to Plaintiff and caregivers. | Objection. Same essential objection as D31, p. 8077.<br><br>This statement is merely an out-of-court narrative by an individual who will not be testifying at trial. | Motion denied for reasons given by the Court in connection with excerpt 43 |
| 52.  D31 | 8214 | 803(6) (see certification)("…Patient is also showing improvement of his left ischium area wound, his wounds surface is healing on the wound bed and around the edges.". | Relevant to Plaintiff's claim for worsening/chronic pressure wounds as being caused by care of BRG; evidence that Plaintiff remained patient of Hope Therapy specifically for wound care treatment | Objection. Same essential objection as D31, p. 8077.<br><br>This statement is merely an out-of-court narrative by an individual who will not be testifying at trial. | Motion denied. While it does express a lay opinion, it is more in the nature of a description and so 701 and 403 concerns are lessened. The Court exercises its discretion to allow into evidence. |

| | | | through March 19, 2019. | | |
|---|---|---|---|---|---|
| 53. D33 | 8218 | 801(d)(2)(Relational and party admissions "patient presents with grandmother, translator…"); 803(4) (Patient presents in office with his translator, grandmother, and care manager for Medicaid. Patient presents to begin wound care, with facility…he is deaf, presents with translator paid for by Medicaid, previously getting wound care at Baton Rouge General, states that he stopped going because he was bleeding a lot when he was debrided, grandmother was educated that patient needs to increase his protein in the amount of meat that he eats, patient was educated that he needs to drink Ensure, states that he does not like Ensure the chocolate, he does not like to take vitamins as well, patient is in the process of getting a personal care attendant, we educated that to heal he would need Zinc, Vitamin C"); 803(6) (see certification page). | Relevant to Plaintiff's compliance with wound care instructions provided through in-person interpreter and impeachment of any Plaintiff witness testimony that (1) Plaintiff compliant with instructions through in-person interpreters and (2) Plaintiff's most effective communication in medical setting is through in-person interpreter. Relevant to impeachment of Plaintiff, Leona Deemer, Dr. Judy Shepherd-Kegl and Paula Rodriguez testimony that Plaintiff did not understand circumstances of discharge from BRG Wound Care or care occurring at BRG Wound Care. | (1) Plaintiff waives any hearsay issues.

(2) Plaintiff waives any expert issues.

(3) Irrelevant and unduly prejudicial. This page does not appear to be dated, so its relevance cannot be meaningfully evaluated. Further, this entry is irrelevant and unduly prejudicial because it creates a "case within a case" where Mr. Francois is obligated to rebut what did/did not happen at the Infectious Disease Associates on an unknown date. Plaintiff will not be able to cross examine the out-of-court (and unknown) individual who made this out-of-court narrative statement. Finally, the Jury will not hear what—if any—training the unknown individual had on working on communicating with Deaf individuals, so the reliability of this record is doubtful.

   See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | Motion granted. 701 lay opinion foundation testimony is lacking and, in addition, excluded under Rue 403. |
| 54. D33 | 8228 | 801(d)(2) (Patient states); 803(4) (Patient states he comes to the office but does not want to get out of the car, patient was educated | Relevant to Plaintiff's claims of worsening/chronic pressure wounds as being caused by care at BRG; evidence of Plaintiff compliance | Objection. Same primary basis as D28, page 8034.

   See also, Plaintiff's argument about Defendant's | Motion granted. 701 lay opinion foundation testimony is lacking and, in addition, excluded under Rue 403. |

| | | | that we cannot help him if he does not want to get out of the car and attend wound care…patient states 'he is need of wound care supplies'); 803(6) (see certification page). | with care following discharge from BRG Wound Care as alternate cause of chronic wounds. | comparative fault / contributory negligence "defense." | |
|---|---|---|---|---|---|---|
| 55. | D34 | 8297 | 803(6) (certification page) | Certification by Medical Records Custodian, certified copies in course of ordinary business. | No objection. | No objection. Will be allowed if another document in this grouping is allowed. Otherwise irrelevant. |
| 56. | D34 | 8302 | 803(6) (certification page)( Physician record in relation to the Louisiana Department of Health traumatic head and spinal cord injury trust fund application, making application on the basis that Plaintiff has medical issues resulting from gunshot wound injury including pressure ulcers). | Relevant to Plaintiff's claim that pressure ulcers are caused by care and treatment at BRG; relevant to impeachment of Plaintiff, Leona Deemer, Paula Rodriguez testimony that Plaintiff seeks damages for pressure ulcers that are result of BRG care. | Objection. Same primary basis as D28, page 8034. | Motion granted. Irrelevant. In addition, it is hearsay and does not fit into the 803(4) exception (statements not by patient) or 803(6) (does not appear to be a record of a regularly conducted activity. In addition, to the extent it has any minimal relevance, 403. |
| 57. | D34 | 8303 | 803(6) (see certification page)( Physician record in relation to the Louisiana Department of Health traumatic head and spinal cord injury trust fund application, making application on the basis that Plaintiff has medical issues resulting from gunshot wound injury including pressure ulcers). | Relevant to Plaintiff's claim that pressure ulcers are caused by care and treatment at Baton Rouge General Wound Care; relevant to impeachment of Plaintiff, Leona Deemer, Paula Rodriguez testimony that Plaintiff seeks damages for pressure ulcers that are result of BRG care. | Objection. Same primary basis as D28, page 8034. | This is page 2 of preceding document. Motion granted. Irrelevant. In addition, it is hearsay and does not fit into the 803(4) exception (statements not by patient) or 803(6) (does not appear to be a record of a regularly conducted activity). In addition, to the extent it has any minimal relevance, 403. |
| 58. | D34 | 8305 | 801(d)(2) (Relational, Party Admissions)("his grandmother says"); 803(4) ("his grandmother says that patient has not been taking his antibiotic as directed"); | Relevant to Plaintiff's claim for worsening/chronic pressure ulcers as being caused by care at BRG; evidence of Plaintiff non-compliance as alternate cause of | Objection. Same primary basis as D28, page 8034. Further, there is no indication that Ms. Deemer had the necessary foundation or knowledge to state | Motion is granted. This is from Caresouth Medical Dental. No certification sheet and no obvious author. The grandmother's statement is hearsay within hearsay and, because it is not the patient's statement, the Rule 803(6) exception does not apply. Defendant did not establish |

| | | 803(6) (see certification page). | chronic wounds; relevant to any Plaintiff witness testimony that Plaintiff is compliant with health care provider instructions relative to prevention of pressure wounds, including instructions provided by in-person interpreters. | that Mr. Francois had "not been taking his antibiotic as directed." Again, this creates a case-within-a-case that will have to be litigated.<br><br>    See also, Plaintiff's argument about Defendant's comparative fault / contributory negligence "defense." | grandmother's status for relational party admission.  It is also excluded under Rule 403. |

Signed in Baton Rouge, Louisiana, on May 11, 2020.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**